BROWN GAVALAS & FROMM LLP
Attorneys for Movant
AMERICAN STEAMSHIP OWNERS
MUTUAL PROTECTION AND
INDEMNITY ASSOCIATION, INC.
555 Fifth Avenue
New York, NY 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

MATSUMOTO, J.

DEC 28 2018

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

MISC 18-3457

In Re: Motion to Quash Subpoena issued to
American Steamship Owners Mutual
Protection and Indemnity Association, Inc.
dated December 17, 2018.

No.: 18-mc-___

-----------------------------------------------------X

## DECLARATION OF DAVID H. FROMM, ESQ.

I, David H. Fromm, hereby declare as follows:

1.      I am admitted to the bar of this Court and am a partner with the firm of Brown

Gavalas & Fromm LLP, attorneys for Movant, American Steamship Owners Mutual Protection

and Indemnity Association (the "American Club").  As such, I have knowledge of the facts and

circumstances of this matter.  My statements herein are based upon my review of the file

maintained at the above-named law firm.  I respectfully submit this declaration in support of the

American Club's motion to quash the Subpoena to Produce Documents, Information, or Objects

or to Permit Inspection of Premises in a Civil Action, dated December 17, 2018, (the

"Subpoena") issued by Pacific Gulf Shipping Co. ("Pacific") on the grounds that the Subpoena

was not authorized by the United States District Court for the District of Oregon in the

Supplemental Admiralty Rule B Attachment proceeding from which it was issued, is unduly

burdensome, is impermissibly overbroad, fails to allow a reasonable time to comply, and seeks privileged and confidential documents and communications.

2.      Annexed hereto as Exhibit "A" is a copy of the Subpoena that Pacific served upon the American Club December 17, 2018.

3.      Annexed hereto as Exhibit "B" is copy of the Verified Complaint For Attachment of Vessel In Admiralty, dated December 3, 2018, filed in the action titled *Pacific Gulf Shipping Co. v. Adamastos Shipping & Trading S.A., et al.*, Civil Action No. 3:18-cv-02076-MO, which is pending in the United States District Court for the District of Oregon – Portland Division (the "Oregon Action").

4.      Annexed hereto as Exhibit "C" is a copy of the Order Authorizing Issuance of Process of Maritime Attachment and Garnishment filed in the Oregon Action on December 3, 2018.

5.      Annexed hereto as Exhibit "D" is a copy of Motion to Vacate the Maritime Rule B Attachment Order (without accompanying Declarations) filed by Vigorous Shipping & Trading S.A. ("Vigorous Shipping") in the Oregon Action on December 3, 2018.

6.      Annexed hereto as Exhibit "E" is a copy of the docket sheet for the Oregon Action that was printed on December 27, 2018.

7.      Annexed hereto as Exhibit "F" is a copy of Plaintiff's Discovery Plan Proposal filed by Pacific in the Oregon Action on December 13, 2018.

8.      Annexed hereto as Exhibit "G" is a copy the of Response to Plaintiff's Discovery Plan filed by Vigorous Shipping in the Oregon Action on December 14, 2018.

9.      Annexed hereto as Exhibit "H" is a copy of the Emergency Motion for Extension of Time to Complete Depositions filed by Pacific in the Oregon Action on December 17, 2018.

10.     Annexed hereto as Exhibit "I" is a copy of the Response in Opposition to Emergency Motion for Extension of Time to Complete Depositions (without accompanying Declarations) filed by Vigorous Shipping in the Oregon Action on December 18, 2018.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
         December 27, 2018

_____
DAVID H. FROMM

3

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| Pacific Gulf Shipping Co., | ) |
| *Plaintiff* | ) |
| v. | ) |
| Adamastos Shipping & Trading S.A., et al. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   3:18-cv--02076-MO

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        American Steamship Owners Mutual Protection and Indemnity Association Inc.
c/o Shipowners Claims Claims Bureau Inc.
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attachment A

| Place: Chalos & Co, P.C. | Date and Time: |
|---|---|
| 55 Hamilton Avenue, Oyster Bay, NY 11771 | |
| gmc@chaloslaw.com; bsparkman@chaloslaw.com | 12/31/2018 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        12/17/2018

| CLERK OF COURT | |
|---|---|
| | OR _____ , Admitted Ro Hac Vice |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*        Pacific Gulf
Shipping Co. _____ , who issues or requests this subpoena, are:

Briton P. Sparkman, 55 Hamilton Avenue, Oyster Bay, NY 11771, 516-714-4300, bsparkman@chaloslaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:18-cv--02076-MO

<div align="center">

**PROOF OF SERVICE**

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

</div>

I received this subpoena for *(name of individual and title, if any)*

on *(date)*                              .

☐ I served the subpoena by delivering a copy to the named person as follows:

on *(date)*                              ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$                              .

My fees are $                              for travel and $                              for services, for a total of $        0.00              .

I declare under penalty of perjury that this information is true.

Date:

<div align="center">

*Server's signature*

*Printed name and title*

*Server's address*

</div>

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEUDLE A

### I.   DEFINITIONS AND INSTRUCTIONS

1.   Unless the context of a particular request indicates otherwise, the relevant time period to which each request refers is January 1, 2014 to the present.

2.   Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3.   Document. The term "document" is defined to by synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Fed. R. Civ. P. 45. A draft or non-identical copy is a separate document within the meaning of this term. "Documents," "documentation," and "communications" include, but are not limited to, the following items within the possession, custody, or control of Plaintiff or known by Plaintiff to exist, whether such items are typed, printed, drawn, sketched, photographed, recorded, or written by hand:

> Contracts; correspondence; telegrams; memoranda; statements; records; reports; books; summaries and/or records of conversations; summaries and/or records of personal conversations; diaries; forecasts; orders; bills; invoices; checks; statistical statements; books or accounts; studies; graphs; charts; work papers; indices; data sheets; data processing cards; analytical records; minutes and/or records of meetings and conferences; reports and/or summaries of entries; reports and/or opinions of consultants; appraisals; records; reports and/or summaries of negotiations; brochures; lists; periodicals; pamphlets; circulars; trade letters; newspaper clippings; press releases; notes; projections; working papers; photographs; drawings; tape recordings; and all other written, printed, recorded, or graphic matter, photographic matter, or other matter, however produced or reproduced.

4.   The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

> A.   "Plaintiff" shall mean and refer to Plaintiff, Pacific Gulf Shipping Co., and includes their agents, representatives, attorneys, and/or anyone else acting on its behalf.

1

    B. "Defendants" shall mean and refer to Defendants, Vigorous Shipping, Blue Wall, Phoenix, and Adamastos Shipping (referred to collectively hereafter as "Defendants"), and includes their officers, directors, employees, agents, servants, representatives, and all other individuals acting on their behalf.

5.    The terms "individual" or "individuals" and "person" or "persons" shall mean each and every individual, corporation, partnership, association, joint venture, firm, group, cooperative, governmental department, and agency (federal, state, or local), division, subsidiary, social or political organization, or any other entity cognizable at law, whether real or juridical or incorporated or unincorporated.

6.    When used with respect to an object or other physical thing, "identify" or "identity" shall mean to give (a) a description, including such characteristics as dimensions, weight, color, and construction material(s); (b) the identity of the manufacturer, builder, or creator; (c) the date of the manufacture, building or creation; and (d) the present location.

7.    The term "account" includes any bank account, escrow account, brokerage account, checking account, investment account, money market account, securities account, or any other type of account maintained by and through You or any of Your affiliates, subsidiaries, or related companies.

8.    The term "You" or "Your" means American Steamship Owners Mutual Protection and Indemnity Association Inc. (*i.e.* The American Club), Shipowners Claims Bureau Inc., and or your representatives, managers, employees, lawyers, agents, and/or any other person acting for and on your behalf.

9.    The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

10.    The terms "all," "any," and "each" shall each be construed as encompassing any and all.

11.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12.    The use of the singular form of any word includes the plural and *vice versa*.

13.    The term "anyone acting on your behalf" includes, but is not limited to, your attorneys, investigators, and/or representatives whether hired or appointed by you.

14. If you contend that any document that would otherwise have been produced may be withheld on grounds that it is privileged under the attorney/client privilege, the work product doctrine, or any other basis, then each such document shall be fully identified in writing by stating those persons having knowledge of any facts related to the claim of privilege and all events, transactions, or occurrences related to the claim of privilege, except that the substance need not be described to the extent that it is privileged.

15. "Possession, custody, or control" includes the joint or several possession, custody, or control, not only by the person to whom these requests for production are addressed, but also the joint or several possession, custody, or control by each or any other person acting or purporting to act on behalf of such person, whether as attorney, accountant, or otherwise.

16. If any document requested herein was at one time in existence, but has been lost, discarded or destroyed, identify such document as completely as possible, providing as much of the following information as possible:

A. the type of document;
B. its date;
C. the date or approximate date it was lost, discarded or destroyed;
D. the circumstances and manner in which it was lost, discarded or destroyed;
E. the reason or reasons for disposing of the document (if discarded or destroyed);
F. the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document;
G. the identity of the person(s) who lost, discarded or destroyed the document; and
H. the identity of all persons having knowledge of the contents thereof.

II.   **DOCUMENTS TO BE PRODUCED**

1.    Any and all documents, materials, and items maintained in your file and records for the vessel the M/V ADAMASTOS.

2.    All billing records You issued with respect the Certificates of Entry for the M/V ADAMASTOS, including but not limited to invoices for Protection & Indemnity Insurance; Freight, Demurrage & Defense Insurance; and any other policies and/or applicable riders;

3.    All documents, materials, and/or records evincing payment of the annual premiums for the M/V ADAMASTOS including but not limited to documents demonstrating the originating bank account information, copies of cancelled checks, wire fund transfer details, and/or any other payment records.

4.    Any and all correspondence and/or communications to, from, by and/or among The American Club, Blue Wall, Phoenix, Adamastos Shipping, and/or any other person or organization concerning and/or related to:

A)    The entry of the M/V ADAMASTOS;

B)    Payments of the annual premiums for the M/V ADAMASTOS;

C)    Claims submitted on behalf of the M/V ADAMASTOS;

D)    Denial of any claims submitted on behalf of the M/V ADAMASTOS by The American Club;

E)    The detention and ultimate abandonment of the M/V ADAMASTOS in Brazil during the period of July 31, 2014 to June 30, 2015.

5.    The Claim File for any claim(s) submitted by Adamastos Shipping, Phoenix, Blue Wall, and/or any other person or organization for and on behalf of the M/V ADAMASTOS during the period of January 1, 2013 to present.

4

6.      Any and all documents, materials, and items maintained in your file and records for the vessel the M/V VIGOROUS.

7.      All billing records You issued with respect the Certificates of Entry for the M/V VIGOROUS, including but not limited to invoices for Protection & Indemnity Insurance; Freight, Demurrage & Defense Insurance; and any other policies and/or applicable riders;

8.      All documents, materials, and/or records evincing payment of the annual premiums for the M/V VIGOROUS including but not limited to documents demonstrating the originating bank account information, copies of cancelled checks, wire fund transfer details, and/or any other payment records.

9.      Any and all correspondence and/or communications to, from, by and/or among The American Club, Blue Wall, Phoenix, Vigorous Shipping, and/or any other person or organization concerning and/or related to:

A)      The entry of the M/V VIGOROUS;

B)      Payments of the annual premiums for the M/V VIGOROUS;

C)      Claims submitted on behalf of the M/V VIGOROUS;

D)      Denial of any claims submitted on behalf of the M/V VIGOROUS by The American Club;

10.      The Claim File for any claim(s) submitted by Vigorous Shipping, Phoenix, Blue Wall, and/or any other person or organization for and on behalf of the M/V VIGOROUS during the period of January 1, 2014 to present.

11.      Any and all documents, materials, and items which shows the board members for The American Club for the years 2014, 2015, 2016, 2017, and 2018.

**David R. Boyajian**, OSB #112582
Email: dboyajian@schwabe.com
**Kent Roberts**, OSB #801010
Email: ckroberts@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| PACIFIC GULF SHIPPING CO., | § | Case No.   3:_____ |
| | § | |
| Plaintiff, | § | |
| | § | VERIFIED COMPLAINT FOR |
| v. | § | ATTACHMENT OF VESSEL |
| | § | |
| ADAMASTOS SHIPPING & TRADING | § | IN ADMIRALTY |
| S.A., VIGOROUS SHIPPING & TRADING | § | |
| S.A., BLUE WALL SHIPPING LTD., and | § | |
| PHOENIX SHIPPING & TRADING S.A., | § | |
| | § | |
| Defendants. | § | |

Plaintiff, PACIFIC GULF SHIPPING CO. (hereinafter "PACIFIC GULF" or "Plaintiff"),

by its undersigned counsel, as and for its Verified Complaint against Defendants ADAMASTOS

SHIPPING & TRADING S.A. (hereinafter "ADAMASTOS SHIPPING"), VIGOROUS

SHIPPING & TRADING S.A. (hereinafter "VIGOROUS SHIPPING"), BLUE WALL

SHIPPING LTD. (hereinafter "BLUE WALL"), and PHOENIX SHIPPING & TRADING S.A.

(hereinafter "PHOENIX SHIPPING") (collectively the "Defendants") avers and pleads as follows:

1

Verified Complaint

## JURISDICTION, VENUE AND PARTIES

1.      Subject matter jurisdiction of this Honorable Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. This case is also an admiralty and maritime claim within the meaning of rule 9(h) of the Federal Rules of Civil Procedure for claim of breach of a maritime contract.  The Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 204.

2.      Venue is proper in this matter as the property sought to be attached is currently within the District of Oregon at the Temco Grain Terminal in Kalama, Washington in the Columbia River.

## THE PARTIES

3.      At all times material hereto, Plaintiff PACIFIC GULF, was and still is a foreign company organized under the laws of The Marshall Islands.

4.      At all times material hereto, Defendant ADAMASTOS SHIPPING was and still is a foreign company incorporated under the laws of Liberia and an address of "Care of PHOENIX SHIPPING, 47-49 Akti Miaouli, 5th Floor, Piraeus 185 36, Greece."

5.      At all times material hereto, Defendant VIGOROUS SHIPPING was and still is a foreign company incorporated under the laws of Liberia and an address of "Care of PHOENIX SHIPPING, 47-49 Akti Miaouli, 5th Floor, Piraeus 185 36, Greece."

6.      At all times material hereto, Defendant BLUE WALL, was and still is a foreign company registered to do business in The Marshall Islands and maintains an address of "Care of PHOENIX SHIPPING, 47-49 Akti Miaouli, 5th Floor, Piraeus 185 36, Greece."

Verified Complaint

7.      At all times material hereto, Defendant PHOENIX SHIPPING was and still is a foreign company which maintains an address at 47-49 Akti Miaouli, 5th Floor, Piraeus 185 36, Greece.

## THE SUBSTANTIVE CLAIMS

8.      On or about April 8, 2014, Plaintiff entered into a charter party agreement with Defendant ADAMASTOS SHIPPING for use of the M/V ADAMASTOS (hereinafter "the Vessel") for a period between ninety (90) days and one hundred and eighty (180) days. The charter agreement between Plaintiff and Defendant ADAMASTOS set forth specific terms, rights, and obligations between the parties.   *See copy of the charter party agreement attached hereto as* **Exhibit 1**.

9.      The April 8, 2014 charter party agreement is a maritime contract.

10.     At all relevant times the M/V ADAMASTOS was claimed to be owned by Defendant BLUE WALL and was managed by Defendant PHOENIX SHIPPING.

11.     At all relevant times notices and contact details for the Owners of the Vessel, Defendant ADAMASTOS was listed as "PHOENIX SHIPPING." *See Exhibit 1*.

12.     Pursuant to the terms of the charter party, Plaintiff was to pay USD 9,000 per day including overtime payable ten (10) days in advance plus USD 130,000 gross ballast bonus to Defendant ADAMASTOS SHIPPING, payable every fifteen (15) days in advance in exchange for the use of a seaworthy vessel. *See Exhibit 1*.

13.     The parties further agreed to the arbitration of disputes arising out of the maritime contract in London with English law to apply. *Id.*

14.     Plaintiff duly complied with all obligations under the terms of the charter party agreement.

Verified Complaint

15.    On or about July 14, 2014, Plaintiff as disponent owners of the Vessel entered into a sub-charter party agreement with Integris Co Ltd. for a one (1) time charter trip of one (1) laden leg *via* Brazil to Singapore-Japan range carrying lawful/harmless grain products in bulk.

16.    Integris Co Ltd. sub-chartered the Vessel to Marubeni Corporation who was the owner of the soyabean cargo to be carried by the Vessel.

17.    The Vessel arrived at Sao Francisco Do Sul, Rio Grande on or about July 31, 2014 and commenced loading of a cargo of soyabeans starting at 0120 hours LT on August 1, 2014.

18.    On or about August 5, 2014, the Vessel was inspected by Port State control in Brazil. Brazilian authorities alleged there were no fewer than forty-two (42) deficiencies with the Vessel. The Port State Control authorities detained the vessel pending further investigation and rectification of the deficiencies.

19.    At or about 1855 hours LT on August 6, 2014, the Vessel while still loading cargo, broke free of her moorings and drifted to the middle of the channel before eventually grounding.

20.    The Vessel had loaded approximately 59,674.680 metric tons of soyabeans as of August 6, 2014, at or about the time that she broke free of her moorings.

21.    The Vessel commenced refloating operations with her own engines and thereafter with the assistance of tugs and pilots, as well as by Salvors, Rebocadores do Brasil SA, and was refloated on August 7, 2014. Subsequently, the Vessel was shifted to the inner anchorage north of the terminal berth.

22.    After the grounding, the terminal would not permit the Vessel to re-berth alongside to load any remaining cargo without meeting various conditions, including the posting of security. Owners ADAMASTOS SHIPPING failed, neglected, and/or refused to comply with the terminal requirements and the Port Captain ordered the Vessel to shift to the outer anchorage, given the

4

Verified Complaint

Vessel's draft and the Port State Control deficiencies and detention imposed on the Vessel.

23.     Over the course of the next six (6) months, the Vessel remained under detention, failed to load the remainder of the cargo, and failed to complete the voyage as required under the various charter party obligations.

24.     During this period, numerous claims and causes of actions were commenced against the Vessel by various third parties in Brazil, including (but not limited to) the following:

    a.  $1,078,512 action by the Salvors for unpaid fees and costs;

    b.  $160,000 action by Sagres Agenciamentos Maritimos Ltda. for unpaid agency fees;

    c.  $8,250 action by Kronos Maritime Agent Limited for unpaid agency fees;

    d.  An action by the Labour Prosecutor's Office which fined the Vessel $19,000 per day from the period of November 26, 2014 – December 30, 2014.  As of December 31, 2014, the LPO action fine was increased to $150,000 per day for non-compliance through January 18, 2015, which was subsequently increased to $187,000 per day.

    e.  On or about December 14, 2014, the Federal Government of Brazil commenced an action directing the Vessel and her owners to make the necessary repairs to the Vessel and deliver the cargo to its final destination.

    f.  On or about January 3, 2015 the Master and crew of the Vessel commenced an action to recover their wages they had not been paid while working on the Vessel.

25.     On February 12, 2015, the Vessel was formally found and/or declared to have been abandoned by her Owners and managers.

26.     Marubeni Corporation sought to recover its loss of value of its soyabean cargo, estimated to be $32,650,000 against Integris Co Ltd. in London arbitration proceedings.

Verified Complaint

27.     In turn, Integris Co Ltd. filed claims against Plaintiff in London arbitration proceedings and sought no less than $18,000,000 plus $559,219.68 for the damages and losses caused by the Vessel's failure to complete the voyage to Marubeni Corporation.

28.     Integris Co Ltd. has sought an additional $737,451.82 in damages for overpaid hire, communication/entertainment/victualling fees, and fuel oil purchased.

29.     On or about June 6, 2016, Plaintiff pursued its claim in London arbitration against ADAMASTOS SHIPPING for breach of the charter party agreement on the grounds that, *inter alia*:

    a.   The Vessel was not suitable for loading, carriage, and discharge.

    b.   The Vessel was not fit for service under the charter party or for any voyage and the Vessel was not seaworthy and/or properly manned, equipped, and supplied.

    c.   The Vessel did not comport with the regulations and/or requirement for any port, port of call, or country.

    d.   The Vessel did not have up-to-date certificates on board.

    e.   ADAMASTOS SHIPPING breached their obligation under the charter party agreement "to make the ship seaworthy, properly manned, equipped, and supplied, and make the holds fit and safe for the reception, carriage and preservation of the cargo."

    f.   ADAMASTOS SHIPPING breached the charter party agreement when ADAMASTOS SHIPPING: (1) failed to take steps to remedy the deficiencies; (2) failed to complete loading onboard the Vessel; (3) failed to commence its voyage to China; (4) failed to deliver the cargo to China; (5) abandoned the Vessel, the contracted voyage, the cargo, and carriage of cargo; and (6) failed to deliver the

Verified Complaint

cargo to the discharge port.

30.     As a result of ADAMASTOS SHIPPING's breach of the charter party agreement and abandonment of the fully laden Vessel, Plaintiff PACIFIC GULF has suffered estimated principal damages in the amount of no less than $19,296,671.50, plus applicable interest, costs, and fees.

31.     On April 19, 2017, the Sole Arbitrator issued a final award against ADAMASTOS SHIPPING and declared that Plaintiff was entitled to be indemnified by ADAMASTOS SHIPPING for *any and all* liabilities that Plaintiff "have or might be found to have or might in the near future" related to the claims up the charter chain by Marubeni Corporation and Integris Co Ltd., plus applicable costs, fees, and interest. *A copy of the First Final Award is attached hereto as Exhibit 2.*

## COUNT I – RECOGNITION AND ENFORCEMENT OF THE ARBITRATION AWARD UNDER THE NEW YORK CONVENTION

32.     PACIFIC GULF restates and re-alleges paragraphs 1 – 31 in the above foregoing Verified Complaint as if set forth herein.

33.     Plaintiff hereby petitions this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et. seq.* (the "New York Convention"), for an order confirming the Award in favor of Plaintiff and against Defendants, joint and severally.

34.     The United States, Liberia, The Marshall Islands, and the United Kingdom (*i.e.* the country in which the Award was rendered), are signatories of the New York Convention.

35.     Jurisdiction is proper in this Court pursuant to 9 U.S.C. § 203.

36.     Venue is proper in this Court pursuant to 9 U.S.C. § 204.

7

Verified Complaint

37.     The April 19, 2017 arbitration award is final and no appeal has (or can be) taken by ADAMASTOS SHIPPING.  Plaintiff respectfully submits that no grounds exist for refusal or deferral of recognition or enforcement of the Award against the Defendants under the Convention.

38.     For the foregoing reasons, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants recognizing and enforcing the Award in the amount of $19,296,671.50, plus applicable interest, costs, and fees as per the Award.

39.     Plaintiff hereby reserves the right to further petition this Court to confirm any further award of interest or costs which may be rendered in respect of this matter.

## COUNT II ALTER-EGO LIABILITY

40.     PACIFIC GULF restates and re-alleges paragraphs 1 – 39 in the above foregoing Verified Complaint as if set forth herein.

41.     The alter ego doctrine applies when either (1) the owner exercised complete control over the corporation with respect to the transaction at issue, or (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil.[1]

a.     Factual Allegations of Domination and Control

42.     Defendant BLUE WALL exercises complete control over Defendants ADAMASTOS SHIPPING, VIGOROUS SHIPPING, and PHOENIX SHIPPING.

43.     ADAMASTOS SHIPPING is merely a captive corporation through which its parent, BLUE WALL entered the charter party agreement as alter ego.  Defendants BLUE WALL and PHOENIX SHIPPING abandoned the M/V ADAMASTOS in Brazil in breach of the charter party agreement, for their own benefit and to the detriment of Plaintiff PACIFIC GULF.

---

[1] *OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, No. 11-CV-377-BR, 2011 U.S. Dist. LEXIS 49054, at *15, (D. Or. 2011) (citing *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997)).

Verified Complaint

44.     Brothers George and Stathis Gourdomichalis, by and through their companies BLUE WALL and PHOENIX SHIPPING exert dominion and control over the vessels in BLUE WALL's fleet, including the M/V ADAMASTOS and the M/V VIGOROUS through their single-purpose entities ADAMASTOS SHIPPING and VIGOROUS SHIPPING, such that all Defendants are in fact one (1) single business entity.

45.     The M/V ADAMASTOS had a 2012 first preferred mortgage and the sole signatory to the agreement on behalf of ADAMASTOS SHIPPING was George Gourdomichalis. *See Adamastos Mortgage attached hereto as Exhibit 3.*

46.     BLUE WALL was established by George and Stathis Gourdomichalis for the purpose of owning and operating a fleet of Vessels. *See Blue Wall's strategy attached hereto as Exhibit 4.*

47.     BLUE WALL's corporate officers include: George D. Gourdomichalis as the Chief Executive Officer; Stathis D. Gourdomichalis as the Chief Operating Officer; and Alexandros (a.k.a. "Alex") Hiadas as the Chief Financial Officer. *See Exhibit 4.*

48.     PHOENIX SHIPPING was established by George D. Gourdomichalis to serve as the 'manager/operator' of BLUE WALL's fleet of vessels. George D. Gourdomichalis is also the PHOENIX SHIPPING's Chief Executive Officer.

49.     BLUE WALL holds itself out as a Vessel owner and states that: "It operates **wholly owned**, top quality dry bulk vessels. BLUE WALL has built a strong balance sheet, **owns cash flow generating vessels** and is well positioned for growth through the cycle." *A copy of Blue Wall's home web page is attached hereto as Exhibit 5.*

50.     BLUE WALL confirms that it owns and operates a fleet of eight (8) vessels listed on its company website: M/V BRAZEN; M/V COURAGEOUS; M/V DAUNTLESS; M/V

9

Verified Complaint

FEARLESS; M/V AUDACIOUS; M/V DEFIANT; M/V INTREPID; and the M/V VIGOROUS. *A copy of Blue Wall's fleet is attached hereto as **Exhibit 6**.*

51.     Brothers George and Stathis Gourdomichalis acquired the vessels by raising equity to purchase the vessels and spent over $45 million dollars on the M/V BRAZEN; M/V COURAGEOUS; M/V DAUNTLESS; and the M/V FEARLESS.  *A copy of the press release confirming same is attached hereto as **Exhibit 7**.*

52.     BLUE WALL's address for public inquiries is "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus, 18536." *A copy of Blue Wall's contact information is attached hereto as **Exhibit 8**.*

53.     According to Equasis, an online database that provides information for marine transportation, BLUE WALL's fleet of eight (8) vessels is separately owned by different entities. The respective registered owners of the eight (8) vessels include: Brazen Shipping & Trading S.A. as registered owner of the M/V BRAZEN; Courageous Shipping & Trading S.A. as registered owner of the M/V COURAGEOUS; Dauntless Shipping & Trading S.A. as registered owner of the M/V DAUNTLESS; Fearless Shipping & Trading S.A. as registered owner of the M/V FEARLESS; Audacious Shipping & Trading S.A. as registered owner of the M/V AUDACIOUS; Defiant Shipping & Trading S.A. as registered owner of the M/V DEFIANT; Intrepid Shipping & Trading S.A. as registered owner of the M/V INTREPID; and Vigorous Shipping & Trading S.A. as registered owner of the M/V VIGOROUS. *A copy of the Equasis search is attached hereto as **Exhibit 9**.*

54.     VIGOROUS SHIPPING, along with the remaining alleged registered owners listed on Equasis, provides its mailing address for the registered owner as "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus, 18536." *Id.*

10

Verified Complaint

55. Even though VIGOUROUS is 'registered' to VIGOUROUS SHIPPING, in actuality, it is beneficially owned and operated by BLUE WALL and PHOENIX SHIPPING, by and through the control of Messrs. George and Stathis Gourdomichalis.

56. Although each vessel in the fleet of BLUE WALL was registered in the name of an individual one-ship company, BLUE WALL beneficially owned and operated these vessels as assets of a single business enterprise; and the purported corporate independence of the respective vessel owners was simply fictitious, as they were entirely subjugated to BLUE WALL's business goals and practices.

57. VIGOROUS SHIPPING, ADAMASTOS SHIPPING, BLUE WALL, and PHOENIX SHIPPING are part of a single business enterprise disguised as separate business entities.

58. The finances and business activities of Defendant BLUE WALL and the vessel-owning entities including Defendants ADAMASTOS SHIPPING and VIGOROUS SHIPPING are so intertwined, and there exists such a unity of ownership and interest between them that no separation exists.

59. The Office of the Deputy Commissioner of Maritime Affairs for the Republic of Liberia maintains copies of the first preferred mortgage for the M/V VIGOROUS, which connects the Defendants and the other vessel-owning entities and establishes Messrs. George and Stathis Gourdomichalis as the beneficial owners of the M/V VIGOROUS. *A copy of the Vigorous Mortgage is attached hereto as **Exhibit 10**.*

60. On December 30, 2014, VIGOROUS SHIPPING and mortgagee CIT Finance LLC entered into a first preferred mortgage agreement. *See **Exhibit 10**.*

Verified Complaint

61.     Under the loan agreement, VIGOROUS SHIPPING pledged its only asset, the M/V VIGOROUS, as collateral to secure a $24,150,000 loan for two (2) other entities, Brazen Shipping & Trading S.A. (hereinafter "BRAZEN") and Dashing Shipping & Trading S.A. (hereinafter "DASHING"), both of which are owned, operated, and controlled by BLUE WALL. *Id.*; *see also* ***Exhibit 6***; ***Exhibit 7***; and ***Exhibit 9***.

62.     VIGOROUS SHIPPING, as collateral guarantor, agreed to guarantee all liabilities of BRAZEN and DASHING in the financial documents. *See **Exhibit 10**.* Such guarantee was given without compensation or an arms-length contract because VIGOROUS SHIPPING, just like all other single purpose entities in the BLUE WALL fleet, is dominated and controlled by BLUE WALL.

63.     BLUE WALL, as parent guarantor, guaranteed all liabilities of BRAZEN and DASHING in the financial documents. *Id.*

64.     Pursuant to Schedule 1, Part A, of the mortgage agreement, VIGOROUS SHIPPING, BLUE WALL, and borrowers BRAZEN and DASHING reflect that the address for all communications is in "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus, 18536." *Id.*

65.     BLUE WALL, at the direction of Messrs. George and Stathis Gourdomichalis regularly cross-guarantees and collateralizes each of the single purpose entities that it owns and controls not for the benefit of the individual vessel owning company, but for the benefit of BLUE WALL.

66.     Defendant BLUE WALL regularly holds itself out to the maritime industry and press as being the owning company which acquires, operates, and owns all vessels within the commonly managed and operated fleet. *See **Exhibit 5** and **Exhibit 7**.*

Verified Complaint

67.     Defendants BLUE WALL and PHOENIX SHIPPING, by and through Messrs. George and Stathis Gourdomichalis, have attempted to intentionally disclaim liabilities for all damages caused by its abandonment of the M/V ADAMASTOS.

68.     All Defendants are at all relevant times operated, controlled, and managed by BLUE WALL, which results in an intermingled web of companies doing business as one (1) single economic enterprise that disregards all corporate formalities.

69.     Though Defendants comprise nominally separate corporate business / legal entities, their ownership and control is so intertwined and fused that they are only distinct from one another as a matter of formality.

70.     This blatant disregard for separate and distinct corporations and dominion by common officers, managers, and directors demonstrates that the Defendants are mere alter egos of each other and subject to the dominion and control of BLUE WALL, by and through *inter alia*, Messrs. George and Stathis Gourdomichalis.

b.      Fraud in the Underlying Transaction

71.     Defendants BLUE WALL and PHOENIX SHIPPING used their control over Defendant ADAMASTOS SHIPPING to enter into a charter party agreement with Plaintiff PACIFIC GULF, despite knowing that the Vessel was unseaworthy, not fit for its intended purpose, and not in compliance with all international regulations. *See **Exhibit 2**.*

72.     Defendants BLUE WALL, PHOENIX SHIPPING, and ADAMASTOS used these false representations to their own advantage in order obtain Plaintiff's business.  Plaintiff would not have contracted for the use of the M/V ADAMASTOS absent these material mis-representations by the Defendants that the Vessel was, among other warranties and guarantees contained in the charter party agreement, a seaworthy vessel that was fit for its intended purpose

13

Verified Complaint

and in compliance with all international regulations, laws, and requirements.

73.     Defendants BLUE WALL and PHOENIX SHIPPING for their own benefit and the fraudulent benefit of the remaining vessels within the fleet, including the M/V VIGOROUS, purposefully failed, neglected, and/or refused to satisfy the claims against the M/V ADAMASTOS in Brazil and instead abandoned the vessel, leaving Plaintiff PACIFIC GULF to deal with the claims from cargo owners and sub-charterers which are no less than $19,296,671.50, plus applicable interest, costs, and fees.

74.     Defendant BLUE WALL now intends to operate its remaining vessels, including the M/V VIGOROUS with impunity, as it attempts to hide behind the sham company VIGOROUS SHIPPING, without providing Plaintiff payment or security for the damages caused by BLUE WALL through its domination, control and use of the M/V ADAMASTOS to commit a wrong which has caused Plaintiff significant injuries and damages.

c.      The South African Proceedings

75.     On or about August 6, 2015, Plaintiff arrested the M/V VIGOROUS in Richards Bay, South Africa on the allegation that the vessel was an associated ship of the M/V ADAMASTOS as defined under South African law.

76.     In that action, the only named parties were the M/V VIGOROUS and VIGOROUS SHIPPING & TRADING S.A.  Named Defendants in this action, BLUE WALL, PHOENIX SHIPPING, and ADAMASTOS SHIPPING, were not defendants in the South African proceedings.

77.     The application in support of the associated ship arrest was premised almost exclusively on the allegation that George Gourdomichalis and Stathis Gourdomichalis were the beneficial owners of both the M/V VIGOROUS and the M/V ADAMASTOS.

Verified Complaint

78.     The order of arrest was issued by Madam Justice Mbatha on August 6, 2015. *A copy of the Order is attached hereto as Exhibit 11.*

79.     Defendant VIGOUROUS SHIPPING challenged the arrest in an *ex parte* proceeding before a different Judge, the Honorable Justice Vahed, and the order of arrest was vacated on August 11, 2015 without Plaintiff being given the opportunity to challenge the documentation submitted to the Court by VIGOUROUS SHIPPING or having the opportunity to appeal the decision before the Vessel sailed.

80.     Justice Vahed issued his Reasons for Judgment several months after the release of the vessel. *A copy of the Reasons for Judgment are attached hereto as Exhibit 12.*

81.     The decision stated that Plaintiff's alleged link between the M/V ADAMASTOS and M/V VIGOROUS did not include sufficient factual allegations because respondents had submitted *ex parte* evidence to demonstrate that there were other external investors in BLUE WALL who 'might or might not have an influence with regard to the direction and fate of the vessels in their fleet.' *Id.*

82.     The Order from the South African proceedings applied a different legal standard, did not include three (3) parties who are named here, and was decided on preliminary, *ex parte* submissions without the benefit of disclosures, discovery, depositions, and/or a trial on the merits.

83.     VIGOUROUS SHIPPING asserted that there were other alleged investors in BLUE WALL aside from the Gourdomichalis brothers in order to refute Plaintiff's founding affidavit in support of the South African arrest on the allegation of the same beneficial ownership.

84.     Justice Vahed's decision is not determinative of the issues pending before this Court as Plaintiff has submitted numerous specific factual allegations in support of a finding of

15

Verified Complaint

alter-ego liability against the Defendants, which are supported by exhibits, including Defendants

own mortgage and loan documents. *See* paragraphs 41 – 74, *supra*.

85.     At this preliminary stage, Plaintiff is not required to definitively establish that

Defendants are alter-egos, but need only show *prima facie*, reasonable grounds to believe so.[2]

86.     Plaintiff seeks prompt discovery in this matter, including requests for production,

interrogatories, and depositions to obtain information and documentation which is solely in the

possession of Defendants.

### APPLICATION FOR ATTACHMENT UNDER
### SUPPLEMENTAL ADMIRALTY RULE B

87.     PACIFIC GULF restates and re-alleges paragraphs 1 – 86 in the above foregoing

Verified Complaint.

88.     Plaintiff's claim against Defendants for breach of the charter party agreement is a

maritime claim.   This is an ancillary proceeding to secure jurisdiction and security over

Defendants.

89.     Defendants are not present and cannot be found in the District within the meaning

of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See*

*Affidavit of Attorney David R. Boyajin attached hereto as* ***Exhibit 13***. Notwithstanding, the

Defendants have within the District tangible personal property comprised of the M/V VIGOROUS,

IMO No. 9298521, which is subject to attachment as security for PACIFIC GULF's claims.

90.     Interest, costs, and attorney's fees are routinely awarded to the prevailing party

under English Law and the procedural rules of London arbitration.   It is standard for interest to be

---

[2] *OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, No. 11-CV-377-BR, 2011 U.S. Dist. LEXIS 49054, at *13 (D. Or. 2011).

Verified Complaint

awarded to the prevailing party in the amount of 5.0%, compounded quarterly. *See Exhibit 2, pgs. 21-23.*

91.     PACIFIC GULF expects to recover the following amounts in arbitration from Defendants:

| | | |
|---|---|---|
| A. | Principal Claim | $19,296,671.50 |
| B. | Estimated Interest for Principal Claim: *4 years at 5.0 %, compounded quarterly* | $3,006,109.48 |
| C. | Arbitration Cost: | $7,100.00 |
| D. | Estimated Attorney's Fees: | $300,000.00 |
| | TOTAL: | $22,609,880.98 |

92.     Therefore, PACIFIC GULF's total claim for breach of the charter party, plus applicable interest, costs, and fees in the aggregate estimated to be no less than $22,609,880.98.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff prays as follows:

A.     That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Verified Complaint;

B.     That if Defendants cannot be found within this district, then all of their respective tangible or intangible property within this district, including M/V VIGOROUS, her engines, boilers, tackle, apparel, and all necessary appurtenances thereto, as well as debts, credits, or effects including but not limited to accounts, checks, disbursement advances, payments, property on board the M/V VIGOROUS, owned by the said Defendants or in the hands or control of persons named as garnishees in the Process of Maritime Attachment and Garnishment be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

C.     That a judgment be entered against the Defendants in the sum of $22,609,880.98,

Verified Complaint

and the proceeds of the assets attached be applied in satisfaction thereof;

      D.     That the Court grant Plaintiff such other and further relief as it deems just, equitable

and proper.

DATED:      DECEMBER 3, 2018

                        RESPECTFULLY SUBMITTED,

                        SCHWABE, WILLIAMSON & WYATT, P.C.


                By:     *s/David R. Boyajian*_____
                        David R. Boyajian, OSB #112582
                        dboyajian@schwabe.com
                        Kent Roberts, OSB #801010
                        ckroberts@schwabe.com
                        1211 SW 5th Ave., Suite 1900
                        Portland, OR 97204
                        Telephone: 503.222.9981
                        Facsimile: 503.796.2900
                        *Of Attorneys for Plaintiff, Pacific Gulf*
                        *Shipping Co.*

*Of Counsel*
CHALOS & CO, P.C.
Briton P. Sparkman
*Pro Hac Vice Application Forthcoming*
*Attorney for Plaintiff*
7210 Tickner Street
Houston, Texas 77055
Telephone: (516) 714-4300
Email: bsparkman@chaloslaw.com

Verified Complaint

**David R. Boyajian**, OSB #112582
Email: dboyajian@schwabe.com
**Kent Roberts**, OSB #801010
Email: ckroberts@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| PACIFIC GULF SHIPPING CO., | § | Case No.    3: 18-cv-02076-MO |
| | § | |
| Plaintiff, | § | |
| | § | ORDER AUTHORIZING |
| v. | § | ISSUANCE OF PROCESS OF MARITIME |
| | § | ATTACHMENT AND |
| ADAMASTOS SHIPPING & TRADING | § | GARNISHMENT |
| S.A., VIGOROUS SHIPPING & TRADING | § | |
| S.A., BLUE WALL SHIPPING LTD., and | § | |
| PHOENIX SHIPPING & TRADING S.A., | § | IN ADMIRALTY |
| | § | |
| Defendants. | § | |

Having reviewed and considered Plaintiff, PACIFIC GULF SHIPPING CO.'s, Motion

for Issuance of Process of Maritime Attachment and Garnishment of and Plaintiff's Verified

Complaint, together with the Attorney Declaration that Defendants cannot be found in the

District, and finding that the conditions of Rule B of the Supplemental Rules for Certain

Admiralty and Maritime Claims of the Federal Rules of Civil Procedure appear to exist, the

Court hereby:

1

Order Authorizing Issuance of Process of Maritime
Attachment and Garnishment

**ORDERS** the Clerk to issue Process of Maritime Attachment and Garnishment as prayed for in the Verified Complaint against all property, tangible or intangible, belonging to Defendants ADAMASTOS SHIPPING & TRADING S.A., VIGOROUS SHIPPING & TRADING S.A., BLUE WALL SHIPPING LTD., and PHOENIX SHIPPING & TRADING S.A., to wit: the M/V VIGOROUS, IMO Number 9298521, her engines, boilers, tackle, apparel, and all necessary appurtenances thereto, as well as debts, credits, or effects including but not limited to accounts, checks, disbursement advances, payments, property on board the M/V VIGOROUS which is currently located within the District of Oregon in an amount up to **USD 22,609,880.98** pursuant to Supplemental Rule B; and

**ORDERS** that the Clerk of the Court shall issue further, supplementary writs of maritime attachment and garnishment, on request of the Plaintiff and without further Order of the Court; and

**ORDERS** that the United States Marshal and/or any Substitute Custodian, which is subsequently appointed by this Court, is authorized to allow the M/V VIGOROUS to conduct normal cargo operations, both discharging and loading, repair works, and to shift berths (consistent with the U.S. Marshal's requirements), always remaining within this judicial district, and always at the risk and expense of the vessel's interests; and

**ORDERS** that a copy of this Order be attached to and served with the said Process of Maritime Attachment and Garnishment.

**ORDERS** that the U.S. Marshal is released and held harmless for any and all costs, fees, liabilities, or other expenses in any way arising out of the attachment of the M/V VIGOROUS; and

2

**ORDERS** that the charges and expenses incurred by the U.S. Marshal shall be deemed *in custodia legis*, and will be paid from the proceeds of the vessel's sale unless otherwise agreed. If a written objection is timely filed, payment of the disputed charges only shall be made after the objection is resolved by agreement of the parties or by Court Order. Payment of the undisputed charges shall not be affected; and

**ORDERS** that any property of the Defendants, specifically the M/V VIGOROUS, her engines, boilers, tackle, apparel, and all necessary appurtenances thereto, as well as debts, credits, or effects including but not limited to accounts, checks, disbursement advances, payments, property on board the M/V VIGOROUS as well as any tangible or intangible property of Defendants in the possession of its steamship agents, may be released from attachment without further order of this Court, if the U.S. Marshal receives written authorization to do so from the attorney who requested the attachment and garnishment, stating that he has conferred with all attorneys representing parties to the litigation, and they consent to the request for the release, and also provided that the Court has not entered any subsequent orders modifying this arrangement for the release of the property which was attached pursuant to this Order; and Plaintiff shall hold harmless and indemnify the United States of America, the United States Marshal, their agents, servants, employees, from any and all claims arising from the attachment and release of the vessel as is herein specifically provided; and

**ORDERS** that any person claiming an interest in the property attached or garnished pursuant to order upon application of the Court, be entitled to a prompt hearing in which Plaintiff shall be required to show why the attachment or garnishment should not be vacated or other relief granted;

3

Order Authorizing Issuance of Process of Maritime
Attachment and Garnishment

SIGNED at Portland, Oregon this $\underline{3}$ day of December 2018.

_Marco Hernández_

UNITED STATES DISTRICT COURT JUDGE

**Presented by:**

David R. Boyajian, OSB #112582
Email: dboyajian@schwabe.com
**Kent Roberts**, OSB #801010
Email: ckroberts@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

*Attorneys for Plaintiff*

*Of Counsel*
CHALOS & CO, P.C.
Briton P. Sparkman
*Pro Hac Vice Application Forthcoming*
*Attorney for Plaintiff*
7210 Tickner Street
Houston, Texas 77055
Telephone: (516) 714-4300
Email: bsparkman@chaloslaw.com

4

Order Authorizing Issuance of Process of Maritime
Attachment and Garnishment

**M. Christie Helmer**, OSB No. 743400
chris.helmer@millernash.com
**Jess G. Webster**, OSB No. 155330
jess.webster@millernash.com
**Sanja Muranovic**, OSB No. 171774
sanja.muranovic@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

**Keith B. Letourneau** (*Pro Hac Vice* pending)
kletourneau@blankrome.com
**Jeremy A. Herschaft** (*Pro Hac Vice* pending)
jherschaft@blankrome.com
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas  77002
Telephone:  713.228.6601
Facsimile:  713.228.6605

Attorneys for Defendant Vigorous Shipping & Trading, S.A.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| PACIFIC GULF SHIPPING CO., | No. 3:18-cv-02076-MO |
| Plaintiff, | DEFENDANT VIGOROUS SHIPPING & TRADING'S MOTION TO VACATE MARITIME RULE B ATTACHMENT |
| v. | |
| ADAMASTOS SHIPPING & TRADING S.A., VIGOROUS SHIPPING & TRADING, S.A., BLUE WALL SHIPPING LTD., and PHOENIX SHIPPING & TRADING S.A., | **(ORAL ARGUMENT REQUESTED)** |
| | **(REQUEST FOR EMERGENCY RELIEF)** |
| Defendants. | |

Page 1 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B
Attachment

## LR 7-1 CERTIFICATE

Counsel for Vigorous Shipping & Trading S.A. conferred in good faith with counsel for plaintiff about the dispute, but the parties have been unable to resolve the dispute.

## LOCAL RULE 7-2 CERTIFICATION

This motion complies with the applicable page limitation under LR 7-2(b) because it does not exceed 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## MOTION

Pursuant to Rule E(4)(f) of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules"), and subject to its restricted appearance under Supplemental Admiralty Rule E(8) as owner of the *M/V VIGOROUS* ("VIGOROUS" or "Vessel"), Vigorous Shipping & Trading S.A. ("Vigorous Shipping") respectfully requests this Court vacate the attachment of its Vessel obtained by Plaintiff Pacific Gulf Shipping Co. ("Pacific"), pursuant to the *ex parte* order of attachment issued on December 3, 2018 (ECF No. 6).  Vigorous Shipping respectfully submits that the attachment should be vacated because:

- Pacific has not asserted a direct claim against Vigorous Shipping and instead is alleging that Vigorous Shipping is the alter ego of one or more of the other defendants named in its Complaint, and thus its property, the Vessel, should be subject to Rule B attachment to satisfy an arbitration award Pacific obtained against defendant Adamastos Shipping (and only Adamastos Shipping);

- Pacific did not and cannot meet its *prima facie* burden under Rule B to establish that Blue Wall or Phoenix are the alter egos of Adamastos Shipping, that anyone other than Vigorous Shipping owns the Vessel and/or that Vigorous Shipping is

Page 2 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B Attachment

4835-2809-3314.4

an alter ego of any of the other defendants named in the Complaint[1]; and,

- A South African court previously ruled against Plaintiff in a nearly identical arrest action against the Vessel which was premised on the same control over the ships ADAMASTOS and VIGOROUS by Blue Wall that Plaintiff is asserting herein, and the doctrine of *res judicata* therefore bars the present action.

## **BACKGROUND/PROCEDURAL HISTORY**

From 2015 until April 2017, Pacific pursued a foreign arbitration proceeding against Defendant Adamastos Shipping & Trading S.A. ("Adamastos Shipping") claiming that Adamastos Shipping breached a charter party it had with Pacific for the M/V ADAMASTOS. On April 19, 2017, an award was issued in Pacific's favor against Adamastos Shipping (the "2017 arbitration award"), which Pacific asserts remains unpaid.

On December 3, 2018, Pacific filed its Original Complaint herein alleging that a total of four companies are liable to it to satisfy the 2017 arbitration award: Adamastos Shipping, Blue Wall Shipping Limited ("Blue Wall"), Phoenix Shipping & Trading S.A. ("Phoenix"), and Vigorous Shipping. While it is not entirely clear which allegations are being made against which defendants, Pacific's Complaint appears to contain no allegations that Vigorous Shipping, the undisputed registered owner of the Vessel Plaintiff has seized, is liable to Pacific in its own individual capacity. Pacific's sole purpose for including Vigorous Shipping in this case is to allege that Vigorous Shipping is an alter ego of one or more of the other named defendants (Blue Wall and Phoenix) and, that these other defendants are alter egos of Adamastos Shipping, and therefore, Vigorous Shipping's property, i.e., the Vessel, is subject to attachment under

---

[1] Enclosed as Exhibit 2 is a chart demonstrating the relationship among all parties for illustrative purposes and the Court's benefit.

Supplemental Admiralty Rule B. Thus, Plaintiff bears the burden of piercing not one, but two corporate veils to reach Vigorous Shipping.

This is the second time Pacific has seized the Vessel and sued Vigorous Shipping, and the allegations have been essentially the same both times. Specifically, in August 2015, Pacific obtained a court order and seized the Vessel in South Africa as security for its then-pending arbitration against Adamastos Shipping. The order was subsequently vacated.[2] In doing so, South African court stated, "[o]n the papers before me it seems that the attempts to establish a link between the mv Adamastos and the mv Vigorous via Blue Wall Shipping boils down to being mere suggestion and conjecture."[3]

The same is true in this case. Under Rule B, Pacific must establish that it has a valid *prima facie* admiralty claim against the Vessel's owner. Pacific's Complaint does not include a single allegation that Vigorous Shipping itself was involved in the charter party at issue in the 2017 arbitration award, or that Vigorous Shipping engaged in any fraudulent conduct of its own (and in fact, Vigorous Shipping was not even in existence when the charter party for the ADAMASTOS was entered into). Instead, Pacific's allegations as to why it is entitled to seize the Vessel essentially boil down to the following:

1.   Blue Wall and/or Phoenix are alter egos of Adamastos Shipping, and Pacific therefore has a valid maritime claim against them to recover the 2017 arbitration award;

2.   Blue Wall and/or Phoenix are alter egos of Vigorous Shipping and are thus the owners of the Vessel; and/or

---

[2] That order is no longer appealable and is a final judgment. *See* Declaration of Patrick Holloway, filed herewith.

[3] A copy of the order is included with the Declaration of Patrick Holloway. The quoted language is at paragraph 21 of the order.

Page 4 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B Attachment

3.      Vigorous Shipping is an alter ego of Adamastos Shipping and thus Pacific has a valid maritime claim against it to recover the 2017 arbitration award.

However, Pacific's Complaint, which is scant on facts and a classic example of conclusory pleading, fails to establish *prima facie* support for any of these allegations. Attached hereto as Exhibit 1 is a copy of the Plaintiff's Verified Complaint with the plainly conclusory and unsupported allegations stricken. Stripped of the conclusory allegations, the remaining *facts* alleged in support of Plaintiff's alter ego claim are few, and none suggest anything other than a business organization that was structured, managed, and financed in manner typical of all shipping companies. Specifically, Pacific's evidence consists of the ADMASTOS charter agreement, the arbitration award in favor of Pacific against Adamastos Shipping, extracts from Blue Wall's website, two preferred ship mortgages, and two South African court orders, the second of which vacated the arrest of the vessel VIGOROUS in 2015. That's it. Nothing about those documents support the conclusion that Blue Wall or Phoenix were the alter ego of Adamastos Shipping, that Blue Wall or Phoenix were the alter ego of Vigorous Shipping, or that Vigorous Shipping was the alter ego of Adamastos Shipping.

In contrast, the evidence Vigorous Shipping submits with this motion conclusively defeats both sets of allegations. For example, regarding the alleged alter ego connections between Blue Wall, Phoenix, and Adamastos Shipping, the evidence establishes the following:

1.      Blue Wall never owned or operated the vessel ADAMASTOS. Blue Wall does not now and never had any direct or indirect ownership interest whatsoever in the

Page 5 -    Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B Attachment

4835-2809-3314.4

vessel ADAMASTOS or Adamastos Shipping. Blue Wall has never served as the parent or affiliated company to Adamastos Shipping.[4]

2.   None of Blue Wall's shareholders have any connection with Adamastos Shipping or the vessel ADAMASTOS, which has been scrapped.  Adamastos Shipping has no corporate relationship to Blue Wall.  Adamastos Shipping was never part of Blue Wall's corporate structure.[5]

3.   Phoenix and Adamastos Shipping had a ship-management agreement that called for Phoenix to serve as the ADAMASTOS's ISM and technical manager. Phoenix never owned the vessel ADAMASTOS (and has not ever owned any ship).  Phoenix had no other connection to Adamastos Shipping.[6]

4.   Blue Wall and Phoenix maintain adequate corporate minutes and records.[7]

5.   There is no intermingling of individual and Blue Wall or Phoenix company records.[8]

6.   Blue Wall or Phoenix are managed by appointed officers and directors, and not by the shareholding owners of the company.[9]

7.   Blue Wall and Phoenix are adequately capitalized.  The companies are current on their contractual obligations.[10]

8.   Blue Wall and Phoenix maintain all corporate formalities, including articles of incorporation, by-laws, and minutes of directors' meetings.[11]

9.   Blue Wall and Phoenix maintain separate books, segregate their funds, and do not commingle their assets with each other or any other entity.[12]

---

[4] *See*, Declaration of George Gourdomichalis, at ¶¶ 4, 9, filed herewith (hereinafter "Dec. G. Gourdomichalis").

[5] Id. at ¶¶ 11, 12.

[6] Id. at ¶¶ 5, 10.

[7] Id. at ¶¶ 14, 18.

[8] Id. at ¶¶ 10. 11, 16. 19.

[9] Id. at ¶¶ 2, 11, 20.

[10] *Id.* at ¶ 21.

[11] *Id.* at ¶ 22.

[12] *Id.* at ¶¶ 14, 15, 22.

Further, the evidence establishes the following regarding Vigorous Shipping:

1.   Vigorous Shipping is the owner of the Vessel.[13]

2.   Vigorous Shipping is wholly owned by Blue Wall.[14]

3.   Vigorous Shipping has entered into a BIMCO Shipman (ship management) agreement with Phoenix to technically and commercially manage the Vessel.  That is the sole relationship between the two companies.[15]

4.   Vigorous Shipping is not inadequately capitalized, and in fact owns a significant asset, i.e., the Vessel.[16]

5.   The directors of Vigorous Shipping observe all the formal legal requirements necessary for separate corporate existence.[17]

6.   There is no commingling of funds between Vigorous Shipping and any other company, including Blue Wall.[18]

7.   There is absolutely no connection and there never was between Vigorous Shipping and Adamastos Shipping.[19]

8.   Vigorous Shipping did not even exist at the time that the charter agreement for the vessel ADAMASTOS was signed.[20]

---

[13] *Id.* at ¶ 7, *See also*, Declaration of Stratis Gourdomichalis, at ¶ 2, 3, 4, filed herewith (hereinafter "Dec. S. Gourdomichalis"); *See also*, Permanent Certificate of Registry for the M/V VIGOROUS, and Certificate of Ownership and Encumbrance dated December 7, 2018, issued by the Liberia Maritime Authority, The Republic of Liberia, copies of which are attached as Exhibits C & D to the Declaration of Sanja Muranovic, filed herewith (hereinafter "Dec. S. Muranovic").

[14] Dec. G. Gourdomichalis, at ¶ 8; Dec. S. Gourdomichalis, at ¶ 6; *and see* Certificate of Shareholding, Exhibit B to Dec. S. Muranovic.

[15] Dec. S. Gourdomichalis, at ¶ 7.

[16] *Id.,* at ¶ 8.

[17] Id., at ¶ 10.

[18] *Id.,* at ¶ 11.

[19] *Id.* at ¶ 12.

[20] *Id.* at ¶ 13; *and see* Certificate of Incorporation of Vigorous Shipping, Exhibit A to Dec. S. Muranovic.

Page 7 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B Attachment

4835-2809-3314.4

Plaintiff's Original Complaint was filed on December 3, 2018. The *ex parte* order

of attachment was entered the same day and served on the Vessel shortly afterwards. The Vessel

remains detained at its berth. Vigorous Shipping files the present motion to seek the Court's

intervention to vacate the attachment and release the Vessel from detention so that it can resume

its commercial sailing schedule/obligations, which have been and continue to be delayed by

Pacific's action in this matter at considerable cost to Vigorous Shipping..

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   ARGUMENT

#### A.   Vigorous Shipping Requests An Emergency Hearing on This Application.

To ensure the constitutionality of the attachment mechanism provided by Rule B,

Supplemental Admiralty Rule E(4)(f) provides any person whose property has been attached

pursuant to Rule B an opportunity to appear before a district court to contest the attachment:

> Whenever property is arrested or attached, any person claiming an
> interest in it shall be entitled to a prompt hearing at which the
> plaintiff shall be required to show why the arrest or attachment
> should not be vacated or other relief granted consistent with these
> rules.

Fed. R. Civ. P. Supp. R. E(4)(f). This rule speaks in mandatory terms and is necessary to give a

claimant its day in court after a plaintiff such as Pacific has been able to obtain *ex parte* relief,

outside of the adversarial system with minimal oversight. The Advisory Committee to the

Federal Rules has stated that at the Rule E(4)(f) hearing the interested party can attack "the

complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings."

Fed. R. Civ. P. Supp. Rule E(4)(f), Advisory Committee's note. Indeed, as was noted in *G.O.*

*Am. Shipping Co., Inc. v. China COSCO Shipping Corp. Ltd.*, C17-912 MJP, 2017 WL 6026959,

Page 8 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B
           Attachment

at \*6 (W.D. Wash. Dec. 5, 2017) (not reported); *see also SLS Shipbuilding Co. Ltd, v. Ionia*

*Management, SA*, 2011 WL 2652365, \*3 (SDTX July 5, 2011), if property is attached and

garnished under **Rule B**, the property owner is "entitled to a prompt hearing at which the

plaintiff [is] required to show why the arrest or attachment should not be vacated . . . ."

Supplemental Admiralty Rule E(4)(f).

It is paramount that this matter be heard as soon as possible.  If the Vessel is not

promptly released, it will cause Vigorous Shipping irreparable harm.  As of December 12, 2018,

the arrest and detention of the Vessel will have caused Vigorous Shipping to suffer an estimated

$169,669 in expense and lost profit, with each additional day of detention costing Vigorous

Shipping an estimated $16,873.[21]  Accordingly, an immediate hearing is necessary to prevent

further harm to Vigorous Shipping.

**B.      Pacific has Failed to Carry Its Burden to Show Why the Attachment Should
be Maintained, and As a Result This Court Must Vacate the Attachment.**

1.      Requirements for a Rule B Attachment of Property.

Rules B and E of the Supplemental Admiralty Rules authorize a court to issue an

order of maritime attachment if the plaintiff satisfies the rules' filing and service requirements

and can show that (1) plaintiff has a valid *prima facie* admiralty claim against the defendant;

(2) the defendant cannot be found within the district; (3) the defendant's property can be found

within the district; and (4) there is no statutory or maritime bar to the attachment.  *Equatorial*

*Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010) (citing

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd*, 460 F.3d 434, 445 (2d Cir. 2006).  To that

end, "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was

---

[21] Dec. S. Gourdomichalis, at ¶¶ 15 & 16.

Page 9 -      Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B
Attachment

properly ordered and complied with the requirements of Rules B and E." *Aqua Stoli*, 460 F.3d at

445, n.5.  Accordingly, the burden is squarely on Pacific to show that the attachment made under

the Court's order was proper.

   A motion to vacate a Rule B attachment is decided based upon whether a *prima*

*facie* claim is shown and the technical requirements for attachment have been met. *Equatorial*

*Marine*, 591 F3d at 1210; *Indagro S.A. v. Bauche S.A*, 652 F. Supp. 2d 482, 485 (S.D.N.Y.

2009), citing *Chiquita Int'l Ltd. v. MV Bosse*, 518 F. Supp 2d 589, 597 (S.D.N.Y. 2007), citing

*Aqua Stoli*, 460 F. 3d at 445.  For purposes of a Rule E(4)(f) post-arrest hearing, "[s]uperficial

compliance with Rule B, while necessary, is not sufficient in determining whether maritime

attachment is appropriate." *Williamson v. Recovery, Ltd. Partnership*, 542 F.3d 43, 52 (2d Cir.

2008).  Rather, "the attaching party must present sufficient evidence to show probable cause for

the attachment." *Diesel Specialists v. M/V Mohawk Transp., LLC.*, 2009 WL 1036085, * 4 (E.D.

La. April 17, 2009) (Engelhardt, J.); *see also G.O. Am. Shipping*, 2017 WL 6026959 at *6.

Thus, a "district court may certainly vacate the [attachment] if it determines, after hearing from

both parties, that the requirements of Rule B have not actually been met." *Williamson*, 542 F.3d

at 52.

   2. <u>Pacific Cannot Meet Its Rule B Burden.</u>

   In an attempt to meet its burden under Rule B, Pacific asks this Court to engage in

a two-part veil piercing exercise that consists of the following allegations:

- Blue Wall and/or Phoenix are alter egos of Adamastos Shipping, and Pacific
  therefore has a valid maritime claim against them to recover the 2017 arbitration
  award; and,

- Blue Wall and/or Phoenix are alter egos of Vigorous Shipping and are thus the
  owners of the Vessel.

Page 10 - Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B
    Attachment

However, Pacific cannot establish either one of these allegations.

Absent extraordinary circumstances, corporate separateness is to be respected. With respect to the issue of corporate identity, "[f]ederal courts sitting in admiralty generally apply federal common law[,]" which allows for "piercing of the corporate veil where a corporation uses its alter ego to perpetrate fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Kite Shipping LLC v. San Juan Nav. Corp*, 2012 WL 6720624, *3 (S.D. Cal. Dec. 26, 2012) (not reported) (citing *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997). In the Ninth Circuit, to overcome the presumption of in favor of corporate identities and state a claim for alter ego liability, a plaintiff must adequately allege that (1) there is such unity of interest that the separate personalities [of the entity and the shareholder] no longer exist and (2) that failure to disregard [their separate entities] would result in fraud or injustice. *Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974, 984 (9th Cir. 2015). Conclusory allegations of alter ego status are inadequate; instead, the "plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Id.*

Piercing the corporate veil is "the rare exception" rather than the rule, and is "usually determined on a case-by-case basis." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S. Ct. 1655, 155 L. Ed. 2d 643 (2003). Allegations of common ownership are insufficient. *Chan v. Soc'y Expeditions*, 123 F.3d at 1294; *MS TAGA BAY v. SA Independent Liner Services Pty Ltd.*, 2009 U.S. Dist. LEXIS 64639 at *7 (S.D.N.Y. 2009). "Actual dominion, rather than the opportunity to exercise control, must be shown." *Id.* at *8 (citing *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69-70 (2d Cir. 1996)).

Page 11 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B
            Attachment

Since each case must be judged on its own facts, no set formula has been created to decide when an alter ego relationship will be found.  However, courts evaluate a number of factors to determine whether the application of an alter ego theory is appropriate, including: (1) the commingling of funds and other assets; (2) the failure to segregate funds of the individual and the corporation; (3) the unauthorized diversion of corporate funds to other than corporate purposes; (4) the treatment by an individual of corporate assets as his own; (5) the failure to seek authority to issue stock or issue stock under existing authorization; the representation by an individual that he is personally liable for corporate debts; (6) the failure to maintain adequate corporate minutes or records; (7) the intermingling of the individual and corporate records; (8) the ownership of all the stock by a single individual or family; (9) the domination or control of the corporation by the stockholders; (10) the use of a single address for the individual and the corporation; the inadequacy of the corporation's capitalization; (11) the use of the corporation as a mere conduit for an individual's business; (12) the concealment of the ownership of the corporation; (13) the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and, (14) the attempts to segregate liabilities to the corporation. *Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974, 984 (N.D. Cal. 2015); *also see Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F. Supp. 2d 46, 54 (S.D.N.Y. 2009).

i.      Pacific's Evidence Fails to Establish Any Alter Ego Allegations.

Conclusory allegations of dominion and control without any genuine factual support are insufficient to sustain an alter ego theory. *Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 22 F. Supp.2d 46, 54n (S.D.N.Y. 2009).  Plaintiff's Verified Complaint is scant on facts and a classic example of conclusory pleading.  Attached hereto as Exhibit 1 is a copy of

the Plaintiff's Verified Complete with the plainly conclusory and unsupported allegations stricken.  Stripped of the conclusory allegations, the remaining *facts* alleged in support of Plaintiff's alter ego claim are few, and none suggest more than a business organization that was structured, managed, and financed in manner typical of all shipping companies.  Most importantly, none of the facts alleged support the conclusion that Blue Wall or Phoenix were the alter ego of Adamastos Shipping, that Blue Wall or Phoenix were the alter ego of Vigorous Shipping, or that Vigorous Shipping was the alter ego of Adamastos Shipping.

Specifically, disregarding the Plaintiff's conclusory allegations, the remaining factual allegations to support Plaintiff's alter ego claims are as follows:

- That Adamastos Shipping and the other named defendants all used the same office address, "c/o Phoenix Shipping," in Greece.  ¶¶ 11 & 54.  This fact is not surprising or suggestive of alter ego relationships, as Phoenix Shipping provided technical management to each of the separate corporate owners of all the vessels within the Blue Wall group under the terms of a standard BIMCO SHIPMAN management agreement.

- That Phoenix Shipping abandoned the M/V ADAMASTOS in Brazil in breach of the charter party agreement.  ¶ 43.  Phoenix Shipping provided technical management services to the owner of the M/V ADAMASTOS.  This fact does not suggest any alter ego relationship.

- That the M/V ADAMASTOS was subject to a mortgage signed by George Gourdomichalis.  ¶ 45.  This fact does not suggest any alter ego relationship.

Page 13 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B
            Attachment

- That the Gourdomichalis brothers established the parent company, Blue Wall, for the purpose of owning and operating a fleet of vessels. ¶ 46. Another fact not suggestive of an alter ego relationship.

- That Blue Wall's corporate officers include the Gourdomichalis brothers, as chief executive officer and chief operating officer, and a Mr. Alexandros Hiadas as its chief financial officer. ¶ 47. Another fact that does not suggest an alter ego relationship. Plaintiff's allegation also fails to disclose the Gourdomichalis brothers are only 2 of the 7 members of Blue Wall's board of directors.

- Brothers George and Statis Gourdomichalis acquired the vessels by raising equity to purchase the vessel and spent over $45 million dollars on the M/V BRAZEN; M/V COURAGEOUS; M/V DAUNTLESS and the M/V FEARLESS. ¶ 51. Contrary to the Plaintiff's misleading allegation, the news article cited as the source of this allegation, Exhibit 7 to the Verified Complaint, actually confirms that Blue Wall, and not the Gourdomichalis brothers, individually, that was raising capital to expand its fleet. The fact that Blue Wall may have done so is also not suggestive of an alter ego relationship with any of the other defendants.

- That Blue Wall's address for inquiries is "c/o Phoenix Shipping." ¶ 52. Here again, the fact that Blue Wall indicated its technical manager for inquiries does not suggest an alter ego relationship.

- That according to the Equasis online database, each of the vessels within the Blue Wall fleet is owned by a separate Liberian corporation. ¶ 53. This fact is merely supportive of the corporate separateness of the vessels, is consistent with Blue

Wall's public statements that it has a fleet of "wholly owned" vessels, and makes clear that there was publicly available information from which the Plaintiff could confirm the identity of the registered owner of the M/V ADAMASTOS. The fact of the separate corporate ownership of the vessels within the Blue Wall fleet is not suggestive of an alter ego relationship.

- That each of the separate Liberian ship owning corporations list "c/o Phoenix Shipping" as it's registered address. ¶ 54. Again, this fact is neither surprising nor suggestive of an alter ego relationship, as Phoenix Shipping was the technical manager of each of the vessels.

- That Vigorous Shipping granted a mortgage upon the M/V VIGOROUS, and served as a collateral guarantor, upon borrowing conducted by two other vessel owning companies within the Blue Wall fleet, i.e. Brazen Shipping & Trading S.A. and Dashing Shipping & Trading S.A., and that Blue Wall, as the parent corporation, guaranteed the obligations of Brazen and Dashing. ¶¶ 59 – 64. While this fact may be a proper factor for consideration in evaluating a possible alter-ego relationship as between Blue Wall and Vigorous Shipping, it is one of minimal significance in the analysis. That shipping enterprises are regularly organized such that their vessels are owned by separate, wholly owned, corporations is well known and has long been the standard organizational structure in the shipping industry. See, *A Fresh Look At The Treatment Of Vessel Managers Under COGSA,* Daniel H. Charest, 78 Tulane L. Rev. 885, February 2004; *see also,* Declaration of George Gourdomichalis, at ¶ 23. As such, it is also

common for marine lenders to regularly require cross collateralization of debt

obligations between companies within an affiliated group of companies.  See,

*Recent Issues in Financing Vessels*, Francis X. Nolan III, ALI (March 16, 1995),

at p. 13; *see also*, Declaration of George Gourdomichalis, at ¶ 23.  The fact that a

lender could extract a cross collateralization commitment from Vigorous Shipping

may have more to do with the lender's relative bargaining power over the

affiliated group of companies than the desires or intent of Blue Wave to ignore

corporate formalities or the corporate separateness of its holdings.  As with any

guarantee, it must be supported by consideration, which could be the value of

being part of a larger fleet of affiliated vessels with a strong brand.  More

importantly, this fact alone would be only one factor of minimal significance in

the multi-factored analysis of whether Blue Wall so dominated Vigorous Shipping

as to justify the imposition of alter ego liability, and insufficient to establish

probable cause to believe that the Plaintiff would prevail on its alter ego claim.


ii.     <u>Vigorous Shipping's Evidence Conclusively Defeats the Alter Ego
        Allegations</u>.

Pacific cannot pierce the corporate veil between Adamastos Shipping and

Blue Wall because the unrefuted evidence establishes that the two companies were

independently owned.  Blue Wall is a holding company that does not own Adamastos Shipping.

*See*, Dec. G. Gourdomichalis, ¶¶ 4, 9.  Blue Wall's owners are not the same as Adamastos

Shipping's owners.  *Id*., ¶¶ 11, 12, 24.  Blue Wall did not own or operate the vessel

ADAMASTOS and Adamastos Shipping was not a subsidiary company of Blue Wall.  *Id.*

Page 16 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B
            Attachment

Blue Wall maintains all proper corporate formalities. *Id.*, ¶¶ 14, 15, 18, 19, 22. Adamastos Shipping is no longer incorporated, and therefore no longer exists. *Id.*, ¶ 12.

Pacific cannot pierce the corporate veil between Adamastos Shipping and Phoenix. Phoenix and Adamastos Shipping had a ship-management agreement that called for Phoenix to serve as the ADAMASTOS's ISM and technical manager. *Id.,* ¶ 10. Phoenix never owned the vessel ADAMASTOS (and has not ever owned any ship). *Id.,* ¶ 5. Phoenix had no other connection to Adamastos Shipping. In the arbitration proceeding between Pacific and Phoenix, the panel found that Phoenix acted as an agent for Adamastos Shipping, and did not accept Pacific's argument that Phoenix was the vessel ADAMASTOS's beneficial owner. *See*, Ex. E to Dec. S. Muranovic.

Additionally, as to both Blue Wall and Phoenix, the unrefuted evidence is that Blue Wall and Phoenix maintain adequate corporate minutes and records, Dec. G. Gourdomichalis, ¶¶ 18, 22; there is no intermingling of individual and Blue Wall or Phoenix company records, *Id.*, ¶ 19; Blue Wall or Phoenix are managed by appointed officers and directors, and not by the shareholding owners of the company, *Id.*, ¶ 20; Blue Wall and Phoenix are adequately capitalized, *Id.*, ¶ 21; The companies are current on their contractual obligations, *Id.*, ¶ 21; Blue Wall and Phoenix maintain all corporate formalities, including articles of incorporation, by-laws, and minutes of directors' meetings, *Id.*, ¶ 22; and Blue Wall and Phoenix maintain separate books, segregate their funds, and do not commingle their assets with each other or any other entity, *Id.*, ¶ 14.

Pacific cannot pierce the corporate veil between Blue Wall and Vigorous Trading, or between Phoenix and Vigorous Trading because the unrefuted evidence establishes that

Vigorous Trading was not in existence at the time that the charter agreement between Adamastos

Shipping and Pacific was agreed upon. *See*, Dec. S Gourdomichalis, ¶ 13, *see also*, Exhibit A to

Dec. S. Muranovic. Thus, there exists no evidence that with respect to the underlying

transaction, Blue Wall or Phoenix exercised dominion and control over Vigorous Shipping that

could have resulted in the latter committing some type of fraud or wrong upon Pacific.

Moreover, Vigorous Shipping's only relationship with Phoenix is per a BIMCO Shipman (ship

management) agreement with Phoenix to technically and commercially manage the Vessel. *Id.*,

¶ 7. Additionally, the only allegations of fraud asserted by Plaintiff are found in paragraphs 71

through 74 of its Complaint, and none of those paragraphs allege any fraudulent conduct by

Vigorous Trading. See discussion below. Simply put, there exists no alter-ego basis for Pacific

to seize Vigorous Shipping's property, i.e., the Vessel.

The foregoing argument is buttressed by Plaintiff's assertions on page 8 of its

Complaint that "[t]he alter ego doctrine applies when either (1) the owner exercised complete

<u>control over the corporation with respect to the transaction at issue</u>, or (2) <u>such control</u> was used

to commit a fraud or wrong that injured the party seeking to pierce the corporate veil." Citing

*OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, No. 11-CV-377-BR, 2011 U.S. Dist.

*LEXIS 49054, at \*15* (D. Or. 2011), citing *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 12954

(9th Cir. 1997).

Here, Plaintiff admits that the "underlying transaction" was the entry into the

charter party between Pacific and Adamastos Shipping for the vessel ADAMASTOS. Vigorous

Shipping did not exist at the time of that transaction, and thus could not have engaged in any

fraud with respect thereto. The words "such control" mean "control over the corporation with

Page 18 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B
            Attachment

respect to the transaction at issue", but again Vigorous Shipping did not exist at that time.

Moreover, Plaintiff has not even alleged any facts demonstrating the commission of any fraud by

Vigorous Trading. The essence of the allegations by Plaintiff of fraud are set forth in Complaint

paragraphs 71-74, none of which make any allegations of any conduct by Vigorous Shipping.

### C.    Res Judicata Bars Pacific's Claim.

Under Ninth Circuit precedent, the "elements necessary to establish res judicata

are: "(1) an identity of claims; (2) a final judgment on the merits, (3) and privity between the

parties." *Headwaters, Inv. v. U.S. Forest Service*, 399 F.3d 1047, 1052 (2005).

In 2015, Pacific arrested VIGOROUS in South Africa and filed suit in the same

proceeding against Vigorous Shipping. The South African Court vacated the arrest on grounds

that there was no association between the vessels VIGOROUS and ADAMASTOS. The court

said: "[t]he essence of proof of association is to establish that the same person or persons have

the power to determine the direction and fate of the two ships in question." *See* Exhibit 12 to

Plaintiff's Complaint, Ex. 12, page 11, ¶ 20. The court found that "[o]n the papers before me it

seems that the attempts to establish a link between the mv Adamastos and the mv Vigorous via

Blue Wall boils down to being mere suggestion and conjecture." South African counsel's

declaration provides evidence of foreign law that the judgment vacating the arrest in South

Africa stands as a final judgment on the merits of the arrest. *See*, Declaration of Patrick Michael

Holloway, filed herewith, and Reasons for Judgment attached thereto, at ¶ 22. Having arrested

VIGOROUS once and sued Vigorous Shipping for the purpose of claiming that they were

controlled by the same company, Blue Wall, and losing on that issue, Pacific is barred from

relitigating its claims against VIGOROUS and Vigorous Shipping on that same issue.

Page 19 -    Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B
             Attachment

Similarly, on April 4, 2017, an English arbitration panel issued a written opinion addressing Pacific's claims against Phoenix ruling in the latter's favor, which serves to bar Plaintiff's attempt to pierce the corporate veil through Phoenix. In the arbitrators' decision, the panel noted that

> the present arbitration was commenced by PGSC against Phoenix on the basis that, although Phoenix purported to be only the managers of the vessel at the relevant time, they were the only company identified as the contractual counterparty in the fixture recap message. PGSC maintained that in reality Phoenix was not a third party manager dealing with Adamastos at arm's length but was, to all intents and purposes, the beneficial owner of the vessel.

*See* Ex. E to Dec. S. Muranovic, at p. 3, ¶ 5. The panel held that

> If, as we believe to be the case, on a true construction of the Charterparty, Phoenix was never a party to the Charterparty but was simply named for informational purposes as the manager of the Vessel on behalf of the registered owners, then it seemed to us to follow that it could not have contracted in its own right. Its' [sic] only involvement was as agent for the registered owners, Adamastos.

*Id.*, p. 16, ¶ 50. The panel ruled for Phoenix, which dispensed with Pacific's argument that Phoenix was the beneficial owner of the vessel ADAMASTOS. Not having been appealed, the 2017 panel ruling now stands as a final judgment on the merits as to whether Phoenix was a beneficial owner of the vessel ADAMASTOS.

Plaintiff seeks to relitigate issues that have been finally decided by a South African court and an English arbitration panel. Just by adding additional defendants and documents, Plaintiff cannot relitigate those issues. Plaintiff is foreclosed from contesting that Blue Wall controlled both the vessels VIGOROUS and the now-scrapped ADAMASTOS, and from contesting that Phoenix was the beneficial owner of ADAMASTOS.

With a judicial finding that Blue Wall did not control both vessels, and an arbitration panel decision that Phoenix was not the beneficial owner of ADAMASTOS, Plaintiff cannot succeed on its alter ego theory against Vigorous Shipping. This is so because Plaintiff must actually pierce two sets of corporate veils. It must establish either that Adamastos Shipping (owner of the vessel ADAMASTOS) was one and the same as Blue Wall, and that Blue Wall is one and the same as Vigorous Shipping. Or, it must establish that Adamastos Shipping was one and the same as Phoenix Shipping, and that Phoenix Shipping was one and the same as Vigorous Shipping. Plaintiff can do neither. If Blue Wall did not control the only asset of Adamastos Shipping, and Phoenix was not the beneficial owner of that same asset, then those two companies cannot be one and the same as Adamastos Shipping, which was a special purpose vehicle (SPV) single-ship owning company.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 21 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B
            Attachment

4835-2809-3314.4

## II.     CONCLUSION

For the foregoing reasons, Vigorous Shipping respectfully requests that this

Honorable Court vacate the attachment of Vigorous Shipping's vessel and dismiss Pacific's

Verified Complaint with prejudice.  Vigorous Shipping, in turn, seeks all other equitable relief,

including the right to obtain damages from Pacific for its wrongful attachment of the Vessel.

DATED:  December 10, 2018.

MILLER NASH GRAHAM & DUNN LLP

s/ Sanja Muranovic
M. Christie Helmer, OSB No. 743400
chris.helmer@millernash.com
Jess G. Webster, OSB No. 155330
jess.webster@millernash.com
Sanja Muranovic, OSB No. 171774
sanja.muranovic@millernash.com
Telephone:  503.224.5858
Facsimile:  503.224.0155

BLANK ROME LLP
Keith B. Letourneau (*Pro Hac Vice* pending)
kletourneau@blankrome.com
Jeremy A. Herschaft (*Pro Hac Vice* pending)
jherschaft@blankrome.com
Telephone:  713.228.6601
Facsimile:  713.228.6605

Attorneys for Defendant
Vigorous Shipping & Trading

12/27/2018                     District of Oregon CM/ECF LIVE Release Ve     6.1

PROTECTIVE ORD

# U.S. District Court
## District of Oregon (Portland (3))
## CIVIL DOCKET FOR CASE #: 3:18-cv-02076-MO

Pacific Gulf Shipping Co. v. Adamastos Shipping & Trading S.A.
et al
Assigned to: Judge Michael W. Mosman
Demand: $22,610,000,000
Cause: 28:1333 Admiralty

Date Filed: 12/03/2018
Jury Demand: None
Nature of Suit: 120 Contract: Marine
Jurisdiction: Federal Question

**Plaintiff**

**Pacific Gulf Shipping Co.**                    represented by **Briton P. Sparkman**
Chalos & Co., P.C.
55 Hamilton Avenue
Oyster Bay, NY 11771
516-714-4300
Fax: 516-750-9051
Email: bsparkman@chaloslaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David R. Boyajian**
Schwabe Williamson & Wyatt
1211 SW Fifth Avenue
Suite1900
Portland, OR 97204
503-796-2943
Fax: 503-796-2900
Email: dboyajian@schwabe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Adamastos Shipping & Trading S.A.**

**Defendant**

**Vigorous Shipping & Trading S.A.**          represented by **Jeremy A. Herschaft**
Blank Rome LLP
717 Texas Avenue
Suite 1400
Houston, TX 77002
713-632-8653
Fax: 713-228-6605
Email: jherschaft@blankrome.com
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Jess G. Webster**
Miller Nash Graham & Dunn LLP
Pier 70
2801 Alaskan Way
Suite 300
Seattle, WA 98121
(206) 777-7560
Fax: (206) 340-9599
Email: jess.webster@millernash.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith B. Letourneau**
Blank Rome LLP
717 Texas Avenue
Suite 1400
Houston, TX 77002
713-402-7650
Fax: 713-228-6605
Email: kletourneau@blankrome.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**M. Christie Helmer**
Miller Nash Graham & Dunn LLP
111 SW Fifth Avenue
Suite 3400
Portland, OR 97204
(503) 205-2464
Fax: (503) 224-0155
Email: chris.helmer@millernash.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sanja Muranovic**
Miller Nash Graham & Dunn LLP
111 SW Fifth Avenue
Suite 3400
Portland, OR 97204
503-205-2381
Email: sanja.muranovic@millernash.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**
**Blue Wall Shipping Ltd.**

**<u>Defendant</u>**
**Phoenix Shipping & Trading S.A.**

12/27/2018                                District of Oregon CM/ECF LIVE Release Ve    6.1

| Date Filed | # | Docket Text |
|---|---|---|
| 12/03/2018 | 1 | Verified Complaint. Filing fee in the amount of $400 collected. Agency Tracking ID: 0979-5654065 Filer is subject to the requirements of Fed. R. Civ. P. 7.1. Jury Trial Requested: No. Filed by Pacific Gulf Shipping Co. against Adamastos Shipping & Trading S.A., Blue Wall Shipping Ltd., Phoenix Shipping & Trading S.A., Vigorous Shipping & Trading S.A. (Attachments: # 1 Attachment Verification of Complaint, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Proposed Summons, # 16 Civil Cover Sheet). (Boyajian, David) (Entered: 12/03/2018) |
| 12/03/2018 | 2 | Motion for Issuance *of Process of Maritime Attachment and Garnishment*. Filed by Pacific Gulf Shipping Co.. (Attachments: # 1 Proposed Document, # 2 Proposed Order) (Boyajian, David) (Entered: 12/03/2018) |
| 12/03/2018 | 3 | Corporate Disclosure Statement . Filed by Pacific Gulf Shipping Co.. (Boyajian, David) (Entered: 12/03/2018) |
| 12/03/2018 | 4 | Motion *for Order Allowing Cargo Handling, Repairs and Movement of Vessel*. Filed by Pacific Gulf Shipping Co.. (Attachments: # 1 Proposed Order) (Boyajian, David) (Entered: 12/03/2018) |
| 12/03/2018 | 5 | Motion to Appoint Custodian . Filed by Pacific Gulf Shipping Co.. (Attachments: # 1 Proposed Order) (Boyajian, David) (Entered: 12/03/2018) |
| 12/03/2018 | 6 | **ORDER AUTHORIZING ISSUANCE OF PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT** 2 . Signed on 12/3/2018 by Judge Marco A. Hernandez. (jp) (Entered: 12/03/2018) |
| 12/03/2018 | 7 | **ORDER APPOINTING CASCADE MARINE AGENCIES LTD. AS SUBSTITUTE CUSTODIAN.** Signed on 12/3/2018 by Judge Marco A. Hernandez. (jp) (Entered: 12/03/2018) |
| 12/03/2018 | 8 | **ORDER ALLOWING CARGO HANDLING, REPAIRS AND MOVEMENT OF VESSEL.** Signed on 12/3/2018 by Judge Marco A. Hernandez. (jp) (Entered: 12/03/2018) |
| 12/04/2018 | 9 | **Notice of Case Assignment:** This case is assigned to Judge Michael W. Mosman. (rs) (Entered: 12/04/2018) |
| 12/07/2018 | 10 | Scheduling Order by Judge Michael W. Mosman. Oral Argument is set for 12/12/2018 at 09:00AM-10:00AM in Portland Courtroom 16 before Judge Michael W. Mosman. Defendant Vigorous Shipping & Trading, S.A. notified the Court that it will be filing a Motion to Vacate. Ordered by Judge Michael W. Mosman. (kms) (Entered: 12/07/2018) |
| 12/07/2018 | 11 | Notice re Complaint,, 1 *Notice of Restricted Appearance Pursuant to Rule E(8)* Filed by Vigorous Shipping & Trading S.A.. (Related document(s): Complaint,, 1 .) (Helmer, M.) (Entered: 12/07/2018) |
| 12/07/2018 | 12 | Motion for Leave to Appear Pro Hac Vice *for Attorney Jeremy A. Herschaft* . Filing fee in the amount of $300 collected; Agency Tracking ID: 0979-5661640. Filed by Vigorous Shipping & Trading S.A.. (Helmer, M.) (Entered: 12/07/2018) |
| 12/07/2018 | 13 | Motion for Leave to Appear Pro Hac Vice *for Attorney Keith B. Letourneau* . Filing fee in the amount of $300 collected; Agency Tracking ID: 0979-5661647. Filed by Vigorous Shipping & Trading S.A.. (Helmer, M.) (Entered: 12/07/2018) |
| 12/10/2018 | 14 | Motion for Leave to Appear Pro Hac Vice *for Attorney Briton P. Sparkman* . Filing fee in the amount of $300 collected; Agency Tracking ID: 0979-5662293. Filed by Pacific Gulf |

| | | Shipping Co.. (Boyajian, David) (Entered: 12/10/2018) |
|---|---|---|
| 12/10/2018 | 15 | Motion to Vacate *Maritime Rule B Attachment* Order on motion for issuance 6 . Oral Argument requested.Expedited Hearing requested. Filed by Vigorous Shipping & Trading S.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order Proposed Order) (Muranovic, Sanja) (Entered: 12/10/2018) |
| 12/10/2018 | 16 | Declaration of Stathis Gourdomichalis . Filed by Vigorous Shipping & Trading S.A.. (Related document(s): Motion to Vacate, 15 .) (Muranovic, Sanja) (Entered: 12/10/2018) |
| 12/10/2018 | 17 | Declaration of George Gourdomichalis . Filed by Vigorous Shipping & Trading S.A.. (Related document(s): Motion to Vacate, 15 .) (Attachments: # 1 Attachment Registered list of Blue WAll owner) (Muranovic, Sanja) (Entered: 12/10/2018) |
| 12/10/2018 | 18 | Declaration of Patrick Holloway . Filed by Vigorous Shipping & Trading S.A.. (Related document(s): Motion to Vacate, 15 .) (Muranovic, Sanja) (Entered: 12/10/2018) |
| 12/10/2018 | 19 | Declaration of Sanja Muranovic . Filed by Vigorous Shipping & Trading S.A.. (Related document(s): Motion to Vacate, 15 .) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Muranovic, Sanja) (Entered: 12/10/2018) |
| 12/10/2018 | 20 | Notice of Appearance of Jess G. Webster appearing on behalf of Vigorous Shipping & Trading S.A. Filed by on behalf of Vigorous Shipping & Trading S.A.. (Webster, Jess) (Entered: 12/10/2018) |
| 12/10/2018 | 21 | **ORDER:** Granting Application for Special Admission *Pro Hac Vice* of Jeremy A. Herschaft for Vigorous Shipping & Trading S.A.. Application Fee in amount of $300 collected. Receipt No. 0979-5661640 issued. Signed on 12/10/2018 by Judge Michael W. Mosman. (ecp) (Entered: 12/10/2018) |
| 12/10/2018 | 22 | Notification of CM/ECF Account for Jeremy A. Herschaft (*Pro Hac Vice* admission). Your login is: jaherschaft. Go to the CM/ECF login page to set your password. (ecp) (Entered: 12/10/2018) |
| 12/10/2018 | 23 | **ORDER:** Granting Application for Special Admission *Pro Hac Vice* of Keith B. Letourneau for Vigorous Shipping & Trading S.A.. Application Fee in amount of $300 collected. Receipt No. 0979-5661647 issued. Signed on 12/10/2018 by Judge Michael W. Mosman. (ecp) (Entered: 12/10/2018) |
| 12/10/2018 | 24 | Notification of CM/ECF Account for Keith B. Letourneau (*Pro Hac Vice* admission). Your login is: kbletourneau. Go to the CM/ECF login page to set your password. (ecp) (Entered: 12/10/2018) |
| 12/10/2018 | 25 | Scheduling Order by Judge Michael W. Mosman. Response is due by 12/11/2018. Oral Argument is set for 12/12/2018 at 09:00AM in Portland Courtroom 16 before Judge Michael W. Mosman, regarding Motion to Vacate *Maritime Rule B Attachment* Order on motion for issuance 6 15 . Ordered by Judge Michael W. Mosman. (dls) (Entered: 12/10/2018) |
| 12/11/2018 | 26 | **ORDER:** Granting Application for Special Admission *Pro Hac Vice* of Briton P. Sparkman for Pacific Gulf Shipping Co.. Application Fee in amount of $300 collected. Receipt No. 0979-5662293 issued. Signed on 12/11/2018 by Judge Michael W. Mosman. (ecp) (Entered: 12/11/2018) |
| 12/11/2018 | 27 | Notification of CM/ECF Account for Briton P. Sparkman (*Pro Hac Vice* admission). Your login is: bpsparkman. Go to the CM/ECF login page to set your password. (ecp) (Entered: 12/11/2018) |
| 12/11/2018 | 28 | Response in Opposition to Motion to Vacate *Maritime Rule B Attachment* Order on motion |

12/27/2018                          District of Oregon CM/ECF LIVE Release Ver     /6.1

| | | for issuance 6 15 . Filed by Pacific Gulf Shipping Co.. (Sparkman, Briton) (Entered: 12/11/2018) |
|---|---|---|
| 12/11/2018 | 29 | Declaration of Michael John Fitzgerald . Filed by Pacific Gulf Shipping Co.. (Related document(s): Response in Opposition to Motion 28 .) (Sparkman, Briton) (Entered: 12/11/2018) |
| 12/11/2018 | 30 | Declaration of Briton P. Sparkman . Filed by Pacific Gulf Shipping Co.. (Related document(s): Response in Opposition to Motion 28 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5) (Sparkman, Briton) (Entered: 12/11/2018) |
| 12/12/2018 | 31 | Notice of Appearance of Garrett S. Garfield appearing on behalf of Al-Saeed Trading Company, Y.S.C. *Limited Notice of Appearance* Filed by on behalf of Al-Saeed Trading Company, Y.S.C.. (Garfield, Garrett) (Entered: 12/12/2018) |
| 12/12/2018 | 32 | Corporate Disclosure Statement . Filed by Al-Saeed Trading Company, Y.S.C.. (Garfield, Garrett) (Entered: 12/12/2018) |
| 12/12/2018 | 33 | Declaration of Garret S. Garfield . Filed by Al-Saeed Trading Company, Y.S.C.. (Attachments: # 1 Exhibit) (Garfield, Garrett) (Entered: 12/12/2018) |
| 12/12/2018 | 34 | Transcript Designation and Order Form for the hearing held on 12/12/18 before Judge Mosman. Court Reporter: Bonita Shumway. Tape Number: unknown. . Filed by Vigorous Shipping & Trading S.A.. (Muranovic, Sanja) (Entered: 12/12/2018) |
| 12/12/2018 | 36 | **MINUTES of Proceedings:** Oral argument held. Defendant's Motion to Vacate 15 will be taken under advisement pending further briefing. Briton Sparkman, David Boyajian present as counsel for plaintiff(s). Jeremy Herschaft, Sanja Muranovic, Garrett Garfield present as counsel for defendant(s). Court Reporter: Bonita Shumway. Judge Michael W. Mosman presiding. (kms) (Entered: 12/13/2018) |
| 12/13/2018 | 35 | OFFICIAL COURT TRANSCRIPT OF PROCEEDINGS FILED Oral Argument held on 12/12/2018 before Chief Judge Michael W. Mosman, Court Reporter Bonita J. Shumway, telephone number 503-326-8188 or bonita_shumway@ord.uscourts.gov. Transcript may be viewed at Court's public terminal or purchased from the Court Reporter before the deadline for Release of Transcript Restriction. Afterwards it may be obtained through the Court Reporter or PACER-See Policy at ord.uscourts.gov. Notice of Intent to Redact Transcript is due by 12/20/2018. Redaction Request due 1/3/2019. Redacted Transcript Deadline set for 1/14/2019. Release of Transcript Restriction set for 3/13/2019. (Shumway, Bonita) (Entered: 12/13/2018) |
| 12/13/2018 | 37 | Notice *of Plaintiff's Discovery Plan Proposal* Filed by Pacific Gulf Shipping Co.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Sparkman, Briton) (Entered: 12/13/2018) |
| 12/14/2018 | 38 | Notice re Notice 37 *Response to Plaintiff's Discovery Plan Proposal* Filed by Vigorous Shipping & Trading S.A.. (Related document(s): Notice 37 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Muranovic, Sanja) (Entered: 12/14/2018) |
| 12/17/2018 | 39 | Unopposed Motion for Protective Order . Filed by Vigorous Shipping & Trading S.A.. (Attachments: # 1 Exhibit 1) (Muranovic, Sanja) (Entered: 12/17/2018) |
| 12/17/2018 | 40 | **STIPULATED PROTECTIVE ORDER**. Signed on 12/17/18 by Judge Michael W. Mosman. (dls) (Entered: 12/17/2018) |
| 12/17/2018 | 41 | ORDER: GRANTING Defendant's Unopposed Motion for Protective Order 39 . As the protective order has been signed, Defendant is ordered to produce the documents referenced in its Exhibit 2 [38-2] and Plaintiff is ordered to hold the depositions of George and Stathis Gourdomichalis as discussed in Defendant's Response to Discovery 38 on or |

12/27/2018 District of Oregon CM/ECF LIVE Release Ver 6.1

| | | before 12/22/18. Following Defendant's production and Plaintiff's depositions, Plaintiff may submit a supplemental request for expedited discovery by 12/27/18 if necessary and the Court will rule immediately. Ordered by Judge Michael W. Mosman. (dls) (Entered: 12/17/2018) |
|---|---|---|
| 12/17/2018 | 42 | Emergency Motion for Extension of Time *to Complete Depositions*. Expedited Hearing requested. Filed by Pacific Gulf Shipping Co.. (Attachments: # 1 Exhibit 1) (Sparkman, Briton) (Entered: 12/17/2018) |
| 12/17/2018 | 43 | Motion for Bond *Memorandum Regarding Requirement of Bond Pending Jurisdictional Discovery*. Filed by Vigorous Shipping & Trading S.A.. (Attachments: # 1 Exhibit 1) (Muranovic, Sanja) (Entered: 12/17/2018) |
| 12/17/2018 | 44 | Declaration of Efstahios Gourdomichalis . Filed by Vigorous Shipping & Trading S.A.. (Related document(s): Motion for Bond 43 .) (Muranovic, Sanja) (Entered: 12/17/2018) |
| 12/17/2018 | 45 | Memorandum *in Opposition to Defendant Vigorous Shipping Ltd's Request for Bond*. Filed by Pacific Gulf Shipping Co.. (Sparkman, Briton) (Entered: 12/17/2018) |
| 12/17/2018 | 46 | Declaration of Edward Mills-Webb . Filed by Pacific Gulf Shipping Co.. (Related document(s): Memorandum 45 .) (Sparkman, Briton) (Entered: 12/17/2018) |
| 12/17/2018 | 47 | Second Declaration of Michael John Fitzgerald . Filed by Pacific Gulf Shipping Co.. (Related document(s): Memorandum 45 .) (Sparkman, Briton) (Entered: 12/17/2018) |
| 12/18/2018 | 48 | Declaration of Briton P. Sparkman *in Support of Emergency Motion for Extension of Time*. Filed by Pacific Gulf Shipping Co.. (Related document(s): Motion for Extension of Time 42 .) (Sparkman, Briton) (Entered: 12/18/2018) |
| 12/18/2018 | 49 | Response in Opposition to Emergency Motion for Extension of Time *to Complete Depositions* 42 . Filed by Vigorous Shipping & Trading S.A.. (Muranovic, Sanja) (Entered: 12/18/2018) |
| 12/18/2018 | 50 | Declaration of Jeremy A. Herschaft . Filed by Vigorous Shipping & Trading S.A.. (Related document(s): Response in Opposition to Motion 49 .) (Attachments: # 1 Exhibit 1) (Muranovic, Sanja) (Entered: 12/18/2018) |
| 12/18/2018 | 51 | Supplemental Response to Emergency Motion for Extension of Time *to Complete Depositions* 42 . Filed by Vigorous Shipping & Trading S.A.. (Muranovic, Sanja) (Entered: 12/18/2018) |
| 12/18/2018 | 52 | Reply *in Response to Opposition (DE 49, 50) and in further Support* to Emergency Motion for Extension of Time *to Complete Depositions* 42 . Filed by Pacific Gulf Shipping Co.. (Sparkman, Briton) (Entered: 12/18/2018) |
| 12/18/2018 | 53 | Supplemental Response *Second Supplemental Response* to Emergency Motion for Extension of Time *to Complete Depositions* 42 . Filed by Vigorous Shipping & Trading S.A.. (Muranovic, Sanja) (Entered: 12/18/2018) |
| 12/19/2018 | 54 | **ORDER:** Plaintiff's Emergency Motion for Extension of Time to Complete Depositions 42 is DENIED. Defendant's Motion for Bond 43 is DENIED. Defendants may move for reconsideration of bond following the Court's ruling on any potential supplementary discovery requests. Ordered by Judge Michael W. Mosman. (kms) (Entered: 12/19/2018) |

| PACER Service Center |
|---|
| Transaction Receipt |
| |

12/27/2018                    District of Oregon CM/ECF LIVE Release Ver 6.1

| 12/27/2018 12:57:21 | | | |
|---|---|---|---|
| PACER Login: | Brown.123:2513182:0 | Client Code: | 1545.0077 |
| Description: | Docket Report | Search Criteria: | 3:18-cv-02076-MO Start date: 1/1/1970 End date: 12/27/2018 |
| Billable Pages: | 5 | Cost: | 0.50 |

**David R. Boyajian**, OSB #112582
Email: dboyajian@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Briton P. Sparkman**, Admitted PHV
Email: bsparkman@chaloslaw.com
CHALOS & CO, P.C.
55 Hamilton Avenue
Oyster Bay, NY 11771

Attorneys for Plaintiff, Pacific Gulf Shipping Co.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **PACIFIC GULF SHIPPING CO.,** | No.  3:18-CV-02076-MO |
| Plaintiff, | Admiralty |
| vs. | |
| **ADAMASTOS SHIPPING & TRADING S.A., VIGOROUS SHIPPING & TRADING S.A., BLUE WALL SHIPPING LTD., and PHOENIX SHIPPING & TRADING S.A.** | **PLAINTIFF PACIFIC GULF SHIPPING CO.'S DISCOVERY PLAN PROPOSAL** |
| Defendants. | |

COMES NOW, Plaintiff Pacific Gulf Shipping Co. ("Plaintiff") by and through its

undersigned counsel and submits the following proposed plan for expedited discovery:

Page 1 -    PLAINTIFF PACIFIC GULF SHIPPING CO.'S
            DISCOVERY PLAN PROPOAL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\132837\238641\DBO\22553030.1

1.      Plaintiff to serve Requests for Production by Friday, December 14, 2018.  A copy of proposed requests for production are enclosed hereto as Exhibit 1.

2.      Plaintiff to serve First Set of Interrogatories by Friday, December 14, 2018.  A copy of proposed interrogatories are enclosed hereto as Exhibit 2.

3.      Responses to Plaintiff's First Requests for Production and First Set of Interrogatories to be served on or before Friday December 28, 2018.

4.      Plaintiff to serve subpoena(s) on the insurance underwriters who hold entry for the M/V ADAMASTOS and the M/V VIGOROUS on or before Monday December 17, 2018.

5.      Depositions of the following individuals to proceed in Greece during the week of January 7-11, 2019,[1] with exact dates, times, and locations to be agreed by counsel:

      A.      George Gourdomichalis;

      B.      Efstahios Gourdomichalis;

      C.      Corporate representative of Vigorous Shipping & Trading S.A.;

      D.      Corporate representative of Phoenix Shipping & Trading S.A.;

      E.      Corporate representative of Blue Wall Shipping Ltd.

6.      Plaintiff respectfully reserves the right to request leave of the Court to seek additional written discovery and/or depositions.

---

[1] Subject to the receipt of a full and complete production and responses by Friday, December 28, 2018. Plaintiff respectfully reserves the right to seek leave of the Court to file a motion to compel and/or continue the depositions in the event the discovery responses are incomplete and/or inadequate.

Page 2 -    PLAINTIFF PACIFIC GULF SHIPPING CO.'S
            DISCOVERY PLAN PROPOSAL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Dated this 13th day of December 2018.

Respectfully submitted,

CHALOS & CO, P.C.

BY:    *S/BRITON P. SPARKMAN*
       Briton P. Sparkman
       *Admitted Pro Hac Vice*
       Email: bsparkman@chaloslaw.com
       Telephone: 516.714.4300
       Facsimile: 516.750.9051

and

SCHWABE, WILLIAMSON & WYATT, P.C.

BY:    *S/DAVID R. BOYAJIAN*
       DAVID R. BOYAJIAN, OSB #112582
       dboyajian@schwabe.com
       Kent Roberts, OSB #801010
       Email: ckroberts@schwabe.com
       Telephone: 503.222.9981
       Facsimile: 503.796.2900

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\132837\238641\DBO\22553030.1

# EXHIBIT 1

**David R. Boyajian**, OSB #112582
Email: dboyajian@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Briton P. Sparkman**, Admitted PHV
Email: bsparkman@chaloslaw.com
CHALOS & CO, P.C.
55 Hamilton Avenue
Oyster Bay, NY 11771

Attorneys for Plaintiff, Pacific Gulf Shipping Co.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **PACIFIC GULF SHIPPING CO.,**<br><br>Plaintiff,<br><br>vs.<br><br>**ADAMASTOS SHIPPING & TRADING S.A., VIGOROUS SHIPPING & TRADING S.A., BLUE WALL SHIPPING LTD., and PHOENIX SHIPPING & TRADING S.A.**<br><br>Defendants. | No. 3:18-CV-02076-MO<br><br>Admiralty<br><br>**PLAINTIFF PACIFIC GULF SHIPPING CO.'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Pacific

Gulf Shipping Co. ("Plaintiff") hereby submits its First Request for Production of Documents

to Defendants Vigorous Shipping & Trading S.A. ("Vigorous Shipping"), Blue Wall Shipping

Page 1 - PLAINTIFF PACIFIC GULF SHIPPING CO.'S FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\132837\238641\DBO\22553030.1

Ltd., ("Blue Wall"), Phoenix Shipping & Trading S.A. ("Phoenix"), and Adamastos Shipping

& Trading S.A. ("Adamastos Shipping") (referred to collectively hereafter as "Defendants").

Defendants shall produce true and  completely accurate copies as required by the Court within

fourteen (14) days.

## I.    DEFINITIONS AND INSTRUCTIONS

1.    Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.    Document. The term "document" is defined to by synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. "Documents," "documentation," and "communications" include, but are not limited to, the following items within the possession, custody, or control of Plaintiff or known by Plaintiff to exist, whether such items are typed, printed, drawn, sketched, photographed, recorded, or written by hand:

> Contracts; correspondence; telegrams; memoranda; statements; records; reports; books; summaries and/or records of conversations; summaries and/or records of personal conversations; diaries; forecasts; orders; bills; invoices; checks; statistical statements; books or accounts; studies; graphs; charts; work papers; indices; data sheets; data processing cards; analytical records; minutes and/or records of meetings and conferences; reports and/or summaries of entries; reports and/or opinions of consultants; appraisals; records; reports and/or summaries of negotiations; brochures; lists; periodicals; pamphlets; circulars; trade letters; newspaper clippings; press releases; notes; projections; working papers; photographs; drawings; tape recordings; and all other written, printed, recorded, or graphic matter, photographic matter, or other matter, however produced or reproduced.

3.    The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

> A.  "Plaintiff" shall mean and refer to Plaintiff, Pacific Gulf Shipping Co., and includes their agents, representatives, attorneys, and/or anyone else acting on its behalf.

Page 2 -    PLAINTIFF PACIFIC GULF SHIPPING CO.'S FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\132837\238641\DBO\22553030.1

B.  "Defendants" shall mean and refer to Defendants, Vigorous Shipping, Blue Wall, Phoenix, and Adamastos Shipping (referred to collectively hereafter as "Defendants"), and includes their officers, directors, employees, agents, servants, representatives, and all other individuals acting on their behalf.

4.   The terms "individual" or "individuals" and "person" or "persons" shall mean each and every individual, corporation, partnership, association, joint venture, firm, group, cooperative, governmental department, and agency (federal, state, or local), division, subsidiary, social or political organization, or any other entity cognizable at law, whether real or juridical or incorporated or unincorporated.

5.   When used with respect to an object or other physical thing, "identify" or "identity" shall mean to give (a) a description, including such characteristics as dimensions, weight, color, and construction material(s); (b) the identity of the manufacturer, builder, or creator; (c) the date of the manufacture, building or creation; and (d) the present location.

6.   The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

7.   The terms "all," "any," and "each" shall each be construed as encompassing any and all.

8.   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.   The use of the singular form of any word includes the plural and vice versa.

10.  The term "anyone acting on your behalf" includes, but is not limited to, your attorneys, investigators, and/or representatives whether hired or appointed by you.

11.  If you contend that any document that would otherwise have been produced may be withheld on grounds that it is privileged under the attorney/client privilege, the work product doctrine, or any other basis, then each such document shall be fully identified in writing by stating those persons having knowledge of any facts related to the claim of privilege and all events, transactions, or occurrences related to the claim of privilege, except that the substance need not be described to the extent that it is privileged.

Page 3 -   PLAINTIFF PACIFIC GULF SHIPPING CO.'S FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900