UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In Re: Motion to Quash Subpoena issued to
American Steamship Owners Mutual
Protection and Indemnity Association, Inc.
dated December 17, 2018
-------------------------------------------------------X

MISC 18-3457

**RESPONSE IN OPPOSITION TO MOTION TO QUASH SUBPOENA *DUCES TECUM*
AND IN SUPPORT OF CROSS-MOTION TO COMPEL RESPONSE**

COMES NOW, Pacific Gulf Shipping Co. ("Pacific Gulf" or "Respondent"), by and through undersigned counsel, who respectfully submits this memorandum in opposition to the American Steamship Owners Mutual Protection and Indemnity Association, Inc.'s (the "American Club") Motion to Quash the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated December 17, 2018 (the "Subpoena") (Doc. 1) and in support of its Cross-motion to Compel Response. The subpoena was properly issued consistent with the Federal Rules of Civil Procedure and the American Club's motion to quash should be rejected in all respects by this Court. In support thereof, Respondent Pacific Gulf submits the Declaration of Briton P. Sparkman, Esq. and would respectfully show as follows:

**PRELIMINARY STATEMENT**

The underlying case involves a Rule B attachment action pending in the District of Oregon before District Judge Mosman. *See Pacific Gulf Shipping Co. v. Adamastos Shipping & Trading S.A., et al.*, 3:18-cv-2076-MO (D. Ore. 2018). Sparkman Decl., ¶ 4. In that matter, Pacific Gulf has attached the M/V VIGOROUS, a Liberian flagged bulk carrier, as security for and to enforce an outstanding Final Arbitration Award[1] issued in London against Adamastos Shipping & Trading

---

[1] The award is for an amount presently estimated to be in excess of USD 22,000,000.

1

S.A. ("Adamastos Shipping"). *Id.*, at ¶ 5. Pacific Gulf's complaint[2] sets forth robust and substantive alter-ego and successor corporation allegations which detail the series of shell corporations[3] which George Gourdomichalis and Stathis Gourdomichalis dominate and control through the use of nominal single purpose brass plate companies such as Adamastos Shipping and Vigorous Shipping and Trading S.A. ("Vigorous Shipping"). Vigorous Shipping has moved to vacate the attachment in Oregon. Sparkman Decl., ¶ 6. A Rule E(4)(f) post-seizure hearing was held; following which District Judge Mosman ruled that Pacific Gulf had established reasonable grounds to support its theory of alter-ego liability and ordered the parties to conduct expedited discovery.

> So the first step is I do believe that plaintiffs have come forward with a sufficient showing to justify further discovery. ***And it's grounded in*** something more than anything I would describe as a fishing expedition, but rather ***solid pieces of evidence, broadly defined, that point to the real possibility of a corporate structure that's more imaginary than real***.

*See* Sparkman Decl., ¶¶ 7-8, **Exhibit 1**, at p. 44:15-17 (emphasis added).

It is undisputed that neither Adamastos Shipping nor Vigorous Shipping have any offices, staff, employees, websites, telephone numbers, fax lines, email addresses, and/or any other physical or electronic presence separate and apart from nominally serving on paper as the owners of the M/V ADAMASTOS and the M/V VIGOROUS, respectively. George Gourdomichalis and Stathis Gourdomichalis through Phoenix Shipping, and others acting at their instruction, dominated and controlled all aspects of the vessels, including their insurance arrangements. Both

---

[2] Following expedited discovery in the District of Oregon, Pacific Gulf is amending its complaint and submitting a supplemental response in further support of Pacific Gulf's alter-ego allegations in the District of Oregon.

[3] Including but not limited to Phoenix Shipping & Trading S.A. ("Phoenix Shipping") and Blue Wall Shipping Ltd. ("Blue Wall") among others.

2

of these vessels are (or were) entered with the American Club for P&I Insurance[4] and FD&D Insurance over the relevant periods of time.[5] *See* Moore Decl., Doc. 1-3, ¶¶ 9-10. Since at least 2004, George Gourdomichalis has served on the Board of Directors for the American Club and he is currently the Chairman of the Board of Directors.[6] The American Club provides claim handling services and guidance through an experienced in-house claims team, which has taken an active role in these disputes, including but not limited to the decisions to refuse to pay the Final Arbitration Award issued in favor of Pacific Gulf and the refusal to post security for the release of the M/V VIGOROUS from attachment in the District of Oregon.[7] It is against this backdrop of corporate interrelatedness and domination and control by George Gourdomichalis and Stathis

---

[4] Protection & Indemnity Insurance (P&I) "provides cover to shipowners, operators, and charterers for third-party liabilities encountered in the commercial operation of entered vessels." The types of items which are covered include: loss of life, injury and illness of crew; cargo loss, shortage or damage; collision; damage to third parties; fines & penalties; pollution; etc. *See* https://www.american-club.com/page/protection-indemnity-insurance, last accessed January 3, 2019.

[5] Freight, Demurrage and Defense Insurance is "often referred to as 'FD&D' or simply 'Defense,' provides members with cover for claims handling assistance and for legal costs in relation to a wide range of disputes. Such disputes are outside the scope of P&I or H&M insurance and arise from the building, buying, selling, owning or operation of an entered vessel." *See* https://www.american-club.com/page/freight-demurrage-defense-insurance, last accessed January 3, 2019.

[6] *See* https://www.american-club.com/page/board-of-directors, last updated June 22, 2018.

[7] "Merchants engaging in maritime commerce 'must reasonably expect to be sued where their property may be found." *Amoco Overseas Oil Co.*, 605 F.2d at 655. To protect themselves they often join protection and indemnity associations ("P&I Clubs"), organizations of shipowners, charterers, and other maritime entities which provide liability and defense coverage for their members . . . **[W]hen security is required to release a ship from attachment or arrest, underwriters are equipped to provide a letter of undertaking which pledges their assets to the payment of the claim.**" *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion*, 773 F.2d 1528, 1536, 1985 U.S. App. LEXIS 21852, *26, 1986 AMC 1 (11th Cir. 1985)(emphasis added).

Gourdomichalis, that the American Club now seeks to quash Pacific Gulf's subpoena. The motion should be denied and the American Club compelled to respond to the subpoena.

## I. PACIFIC GULF IS AUTHORIZED TO ISSUE THE SUBPOENA.

During the Rule E(4)(f) hearing on December 12, 2018, Pacific Gulf informed District Judge Mosman of an intention to serve a subpoena on the American Club. *See* Sparkman Decl., **Exhibit 1**, Tr., p. 36:21-24 ("We'd also request leave to serve subpoenas on the P&I [that had] the entry for the vessel at the relevant time period. They're located in New York. We can issue those quickly. It's the American Club."). In turn, the Court ordered Pacific Gulf to proceed with discovery on an expedited basis. On December 13, 2018, Pacific Gulf provided written notice to the District Court that a subpoena would be served on the American Club on or before December 17, 2018. *Id*., at ¶¶ 10-14. The District Court in Oregon did not restrict Pacific Gulf's right to serve discovery on the American Club, despite objection by Vigorous Shipping. *Id*., at ¶ 14; *cf*. DE 1, p. 7.

Pacific Gulf complied with its notice to the Oregon Court of an intention to serve the subpoena, completed proper service of the subpoena on December 17, 2018, and provided notice to Defendant Vigorous and the District Court in Oregon of the fact that the subpoena was served; all of which being squarely in-line with the District Court's order to expeditiously conduct discovery, including the subpoena served on the American Club in this matter. *See* Fed. R. Civ. Procedure Rule 26(d)(1). Accordingly, the motion to quash should be denied and the American Club should be compelled to provide responsive documents to the pending requests.

## II. THE SUBPOENA IS NOT OVERLY BROAD OR UNDULY BURDENSOME.

The American Club argues that the subpoena should be quashed because the requests are overly broad and responding to the requests would be unduly burdensome. Doc. 1, pp. 8-9. In

support, the American Club offers the declaration of Senior Vice President Donald R. Moore who alleges that complying with the subpoena is unduly burdensome because of the difficulties with obtaining documents from five (5) offices: Greece, Shanghai, Houston, London, and New York within fourteen (14) days. *See* Doc. 1-3, ¶11. The American Club is one of the largest P&I Clubs in the world and is part of the International Group, which is made up of the thirteen (13) P&I Clubs which provide liability cover for over 90% of world shipping. The American Club is in the shipping business which is 24/7/365 worldwide. As the American Club's own promotional materials state:

> From a logistical standpoint, the Managers are available 24 hours a day, 365 days a year to assist the Club's Members in the handling of claims. The Club's offices are within the local time zones of all five continents, and their geographic locations ensure that a member of its claims handling team is available at any time. With offices in New York, London, Piraeus, Hong Kong, Shanghai and Houston, the Club is truly accessible wherever its services are required.

*See* www.americanclub.com/files/files/The_American_Club_a_Profile_September_2018.pdf. The world-wide coverage offered by the American Club is consistent with the fact that "[m]ost P&I Clubs have commercial correspondents in every major port in the world." *Schiffahartsgesellschaft Leonhardt & Co.*, *supra* (citing *Reynardson*, The History and Development of P&I Insurance: The British Scene, 43 Tul. L. Rev. 457 (1969)).

"A party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request or interrogatory is not relevant or how each question is overly broad, burdensome or oppressive . . . submitting affidavits or offering evidence revealing the nature of the burden.'" *Vidal v. Metro—North Commuter Railroad Co.*, No. 3:12CV248, 2013 U.S. Dist. LEXIS 44430, 2013 WL 1310504, at *1 (D. Conn. March 28, 2013) (alteration in original) (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)); *see*

*also Sky Med. Supply Inc. v. SCS Support Claim Servs.*, 2017 U.S. Dist. LEXIS 43668, *28 (E.D.N.Y. 2017). The burdens identified by the American Club are related to the timing of the response and collection of documents from various offices all of which report to the company's New York City based headquarters. It is respectfully submitted that the collection of these materials and responsive items is not unduly burdensome. Rather, it is more akin to a few clicks of the proverbial mouse for a sophisticated and industry leading P&I Club. All of the documents sought can easily be collected and transmitted via electronic means without further delay.

It is axiomatic that relevance is not a valid objection to the Rule 45 subpoena. Acknowledging this, the American Club does not raise the objection, but argues that producing responsive materials would be unduly burdensome because materials in the claim files for the M/V ADAMASTOS and the M/V VIGOROUS are not 'related' to Pacific Gulf's alter-ego claims pending in the District of Oregon. To the contrary, the details of who, why, and how information was exchanged in relation to the underlying claims, as well as the insurance coverages for the M/V ADAMASTOS and M/V VIGOROUS goes to the heart of the issue of the persons and shell companies that were and continue to dominate and control these Vessels. It is respectfully submitted that the subpoena requests are not overbroad, but are specifically tailored for discoverable information and the American Club should be compelled to produce same by this Honorable Court.

### III. A REASONABLE AMOUNT OF AMOUNT OF TIME TO COMPLY WAS PROVIDED.

The subpoena issued the American Club had a return date of December 31, 2018. As Courts sitting in this District have found, fourteen (14) days from the date of service for compliance is presumptively reasonable. *See In re Rule 45 Subpoena Issued to Cablevision Sys. Corp.*, 2010 U.S. Dist. LEXIS 40653, *18, 38 Media L. Rep. 1940 (E.D.N.Y. 2010) ("Although Rule 45 does

6

not define "reasonable time," many courts have found fourteen days from the date of service as presumptively reasonable in light of the language of Rule 45(c)(2)(B) (citing *In re Rule 45 Subpoena to Fidelity Nat'l Info. Servs.,* 2009 U.S. Dist. LEXIS 122142, at *1 (M.D. Fla. Dec. 11, 2009); *McClendon v. TelOhio Credit Union, Inc.*, 2006 U.S. Dist. LEXIS 57222 (S.D. Oh. Aug. 14, 2006)). In this matter, it is already January 9, 2019 and the American Club has not produced *any* responsive documents to the subpoena. It is respectfully submitted that the return date for the subpoena was proper under Rule 45. Notwithstanding, it is respectfully submitted that this Court has the authority to and should compel the American Club to produce responses to the subpoena requests by a date certain to be set by the Court.

**IV. THE CLAIM OF PRIVILEGE IS NOT A BASIS FOR QUASHING THE SUBPOENA.**

Finally, the American Club argues that the subpoena must be quashed because it contains materials which are protected by the "attorney-client" privilege or were created in anticipation of litigation. DE 1, pp. 11-12. However, "the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *Von Bulow v. Von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) (quoting *In re Grand Jury Subpoena Dtd. January 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984)). "'That burden cannot be met by mere conclusory or *ipse dixit* assertions in unsworn motion papers authored by attorneys." *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 2006 U.S. Dist. LEXIS 90970 at *4 (S.D.N.Y. Dec. 15, 2006). A critical and required step in meeting the burden of establishing the existence of a privilege or an immunity from discovery is the production of an adequately detailed privilege log "sufficient to enable the demanding party to contest the claim." Fed. R. Civ. P. 45(d)(2)(A); *In re Application for Subpoena to Michael I. Kroll*, 224 F.R.D. 326, 328 (E.D.N.Y. Oct. 27, 2004).

7

The Second Circuit has held that a party objecting to a subpoena for production and inspection must set forth ***all of its grounds for objection, including privilege grounds, within fourteen days of service of the subpoena***. *DG Creditor Corp. v. Dabah*, 151 F.3d 75, 81 (2d Cir. 1998); Fed. R. Civ. P. 45(c)(2)(B) (person commanded to produce and permit inspection may object to subpoena within 14 days). When a party, such as the American Club, withholds documents responsive to a subpoena, a full privilege log must be supplied along with the objection or within a reasonable time thereafter. *Id.* A party failing to produce a privilege log fails to perfect its claim of privilege and, therefore, may not rely upon it to forestall discovery. *Ruran v. Beth El Temple of W. Hartford, Inc.*, 226 F.R.D. 165, 168-69 (D. Conn. 2005); *accord Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir. 1992).

Here, the American Club has not produced a privilege log and/or otherwise identified materials, documents, or items in its possession which are responsive to the subpoena requests but are being withheld based on a claim of privilege. Second Circuit case law makes clear that the American Club must comply with the obligation to produce a privilege log for any/all documents it withholds and cannot simply rely on argument of counsel to quash the Rule 45 subpoena. It is respectfully submitted that the American Club must be compelled to produce the documents responsive to the subpoena and to serve a privilege log for any/all responsive materials which it seeks to withhold on the basis of privilege.

V. **THIS COURT SHOULD COMPEL RESPONSES TO THE SUBPOENA.**

The present subpoena was issued and served properly pursuant to Fed. R. Civ. Procedure Rule 45 and consistent with District Judge Mosman's directive to conduct discovery on an expedited basis. The District Court in Oregon granted Pacific Gulf leave to file a supplemental response to the Vigorous Shipping motion to vacate on or before January 15, 2019. As part of that

briefing, Pacific Gulf may include "any specific items it lacks to sufficiently brief on the merits. These specific items must be ones Plaintiff could obtain through emergency discovery." *See* Sparkman Decl., Exhibit 2. Among other documents and materials, Pacific Gulf requires the responses to the subpoena from the American Club.

The American Club's delay in responding to the subpoena will delay the resolution of the attachment action and the M/V VIGOROUS (which is fully laden with a perishable cargo of wheat that is destined for war-torn Yemen) to remain in port. Sparkman Decl., ¶¶ 16-17. The American Club has refused to post security through a Letter of Undertaking or other means to obtain the release of the M/V VIGOROUS. This Court should reject the American Club's attempt to hide the ball on producing responsive materials to the subpoena requests to the advantage of no one but its Chairman of the Board and the detriment of every other party involved. Accordingly, Pacific Gulf respectfully requests this Court enter an order compelling the American Club to produce responses in accordance with Rule 45 of the Federal Rules of Civil Procedure.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons and what may be added at oral argument, Pacific Gulf Shipping Co. respectfully requests that this Court deny the American Club's Motion to Quash Subpoena, compel the American Club to serve responses to the requests, and grant such further and different relief as is just and proper.

Respectfully submitted,

Dated: Oyster Bay, New York
      January 9, 2019

CHALOS & CO, P.C.

/s/ Briton P. Sparkman
Briton P. Sparkman, Esq.
55 Hamilton Avenue
Oyster Bay, NY 11771
Tel: (516) 714-4300
*Attorneys for Pacific Gulf Shipping Co.*

9

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing memorandum was served upon all known counsel of record via ECF on the 9th of January, 2019.

                                      /s/ Briton P. Sparkman
                                      Briton P. Sparkman, Esq.